STATE of Iowa, Appellee,

v.

Arthur Stewart COTT, Appellant.

No. 62237.

Supreme Court of Iowa.

Sept. 19, 1979.

James R. Cook, Des Moines, for appellant.

Thomas J. Miller, Atty., Gen., Lona J. Hansen, Asst. Atty. Gen., and Dan L. Johnston, Polk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, ALLBEE, and LARSON, JJ.

ALLBEE, Justice.

Defendant Arthur Stewart Cott was charged and convicted of violating section 725.10, The Code 1977, which prohibits lascivious acts with persons under sixteen years of age for the purpose of arousing or satisfying sexual desires. The evidence at trial showed that on November 28, 1977, a five-year-old girl accompanied her mother to the Target Store on Euclid Avenue in Des Moines. They initially went to the toy department, where the girl became temporarily separated from her mother. According to the girl's testimony, a man approached her in the toy department, asked her if she wanted a quarter and she decided that she did. The man and she then walked to the adjacent shoe department because he told her that she would find the money there on the floor. In the shoe department, the man pulled down his pants and prompted the girl to touch his genitals. The man also touched the girl's pubic area at a time when her pants were down. Afterwards, the man gave the girl a quarter, instructing her to tell her mother that she found it.

Other evidence which trial court admitted, pursuant to its ruling on defendant's motion in limine, was the testimony of an eight-year-old girl regarding her involvement in similar incidents with defendant. The last of those incidents, for which he was convicted, had occurred approximately sixteen months earlier in Ames. She testified that defendant and she had touched each other's genital area a couple of times in his home and that he had twice given her money, advising her to tell her family that she found it.

In its instructions, trial court cautioned the jury that a conviction of the defendant must be based on the incident which oc-

curred at the Target Store "and no other act." The jury was also instructed that the evidence of the prior incidents should only be considered as it might relate to defendant's motive on November 28, 1977, his intent, his identity as the offender and any common scheme or plan the jury might have found the defendant to have followed.

The sole error which defendant has urged on appeal was the admission of the testimony regarding the Ames incidents. The court of appeals reversed and remanded for a new trial, holding that the trial court had abused its discretion in admitting that testimony. While acknowledging that the evidence of defendant's prior offense had probative value, the court of appeals concluded that it was outweighed by its prejudicial effect.

We subsequently granted the State's application for further review of the decision of the court of appeals and now vacate that decision and reinstate trial court's judgment.

 I. In reviewing trial court's exercise of discretion in admitting the testimony regarding defendant's prior offense, we first consider the bases upon which relevance of the evidence may be found. The general rule is that "one crime cannot be proved by proof of another." *State v. Schlak,* 253 Iowa 113, 115, 111 N.W.2d 289, 291 (1961). The purpose of the rule is to exclude from the jury's consideration evidence which has no relevancy except to show that the defendant is a bad person and thus likely committed the crime in question. *See State v. Johnson,* 224 N.W.2d 617, 621 (Iowa 1974) (quoting *McCormick's Handbook of the Law of Evidence* § 190, at 453 (2d ed. 1972)); *State v. Wright,* 191 N.W.2d 638, 641 (Iowa 1971); Annot., 77 A.L.R.2d 841, 846–48 (1961). Consequently, evidence which is relevant to prove some fact or element in issue other than the defendant's criminal disposition escapes the rule's prohibition. We have accordingly recognized certain categories of permissible objectives for proof of prior criminal acts: (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or

system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, (5) identity of the person charged with the commission of the crime. *State v. Folkens,* 281 N.W.2d 1, 5 (Iowa 1979) (citations omitted).

The State urges that the contested testimony falls within one or more of these well-recognized exceptions and within a sixth proposed exception: to show the lewd and lascivious disposition of the defendant. Because a cursory examination of some of our more recent opinions might yield arguable support for the creation of such an added exception in cases of this nature, we believe clarification is necessary.

This court's allowance of evidence of prior offenses for the purpose of showing the lewd disposition of the defendant in cases involving lascivious acts with a child apparently originated in *State v. Neubauer,* 145 Iowa 337, 124 N.W. 312 (1910). *Neubauer* upheld the trial court's refusal to exclude evidence of prior offenses of the same character as the crime charged and committed by the defendant against the prosecuting witness. Finding that the defendant's intent was in issue, the *Neubauer* court applied the rule previously used in rape cases which permitted evidence regarding prior offenses involving the same parties to show the defendant's intent. That opinion quoted the following language from a rape case: "[P]revious conduct of defendant tending to show a lascivious disposition on his part *toward the prosecutrix* is admissible in a prosecution for a sexual offense." *Id.* at 346, 124 N.W. at 315 (quoting *State v. Crouch,* 130 Iowa 478, 484, 107 N.W. 173, 175 (1906) (emphasis added)).

Later, *State v. Kinkade,* 241 Iowa 1259, 1263, 43 N.W.2d 736, 738 (1950), approved the instruction of the trial court that evidence of prior similar sexual acts of the defendant with the prosecutrix was relevant to show the "lascivious and lewd disposition of the defendant." We discern, however, that the primary rationale of that decision was that the prior acts, as in *Neubauer,* showed defendant's intent with re-

gard to the prosecutrix, not an indiscriminate lewd disposition on his part. *Kinkade* also pointed out that this court had uniformly excluded evidence of previous conduct of the defendant with persons other than the prosecutrix if the evidence was not relevant to one of the well-recognized classes of acceptable purposes for such evidence. *See id.* at 1261–62, 43 N.W.2d at 738; *see, e. g., State v. Weaver,* 182 Iowa 921, 924–26, 166 N.W. 379, 380–81 (1918); *State v. Vance,* 119 Iowa 685, 686–87, 94 N.W. 204, 204–05 (1903).

Those well-known exceptions were held applicable in cases subsequent to *Kinkade.* For example, *Schlak,* 253 Iowa at 116–17, 111 N.W.2d at 291, approved the admission of testimony of prior victims to show motive ("the desire to gratify his lustful desire by grabbing or fondling young girls") and identity (the victims were accosted at the same type of location and had identified the defendant's car license number). We note, however, that the opinion inaptly echoed the words of *Kinkade* by in one instance equating the motive purpose with one "to show the lewd disposition . . . of defendant." *Id.* at 117, 111 N.W.2d at 292. That language was also reiterated in *State v. Maestas,* 224 N.W.2d 248, 250–51 (Iowa 1974), which held that proof of prior incestuous acts of the defendant with daughters other than the prosecutrix was admissible to show either "defendant's common scheme or lewd disposition."

■ As is apparent from this summary, evidence tending to prove a lewd disposition of the defendant charged with lascivious acts with a minor was originally considered relevant only insofar as it showed his intent solely toward the prosecuting witness. Almost imperceptibly, the lewd disposition exception was overextended to permit evidence of the defendant's acts with other victims. First, in *Schlak,* it crept in as a synonym for motive. Then, in *Maestas,* it was used as an alternative rationale to the common scheme exception. However, proving lewd disposition has never been the sole purpose for which this court has approved the admission of testimony concerning prior acts with persons other than the prosecutrix. Nor are we now disposed to endorse lewd disposition as a separate, exclusively adequate exception to the rule prohibiting the admission of testimony regarding prior victims. A focus on the criminal or aberrant disposition of the defendant with regard to various victims is exactly the sort of prejudice which the general rule seeks to avoid. By creating an exception of this kind, we would seriously erode the impact of the general rule, proscribing evidence of prior criminal conduct, in the context of sex crimes.[1] The resultant unfairness to those accused of sex crimes is self-evident.[2]

---

1. *See* Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses,* 6 Ariz.L.Rev. 212, 215 (1965). The article indicates the majority of courts apply an exception for lewd disposition only to admit evidence regarding prior acts with the prosecutrix. *Id.* at 214, 218; *see* McCormick, *supra,* § 190 at 449–50. *See generally* 22A C.J.S. *Criminal Law* § 691(31), (35) (1961). However, it also notes the trend, represented by a minority of jurisdictions, to extend the exception to evidence regarding prior victims. Gregg, *supra* at 215. Most of the courts which have so extended the rule have done so "almost unconsciously by extending the narrow exception for similar offenses with the prosecuting witness, or else by blithely forcing such offenses into one of the standard exceptions." *Id.* at 225. It is noteworthy that some of those courts have recently placed restrictions on such use of the exception. *See, e. g., Lovely v. United States,* 169 F.2d 386, 390 (4th Cir. 1948), *cert. denied,* 338 U.S. 834, 70 S.Ct. 38, 94 L.Ed.

508 (1949) (excluding evidence of prior rapes by defendant in rape cases); *State v. Treadaway,* 116 Ariz. 163, 167, 568 P.2d 1061, 1065 (1977) (requiring expert medical testimony in some cases to show that defendant's prior acts demonstrate a continuing emotional propensity to commit the charged sexual offense).

2. The implicit assumption in treating sexual offenders differently from other criminals is that they have a greater propensity for recidivism. Most studies show this assumption unwarranted. *See* State v. Spreigl, 272 Minn. 488, 493 n. 10, 139 N.W.2d 167, 170 n. 10 (1965); Gregg, *supra* note 1, at 231–34.

· Also, the possibility of prejudice resulting from the admission of evidence of prior sexual offenses is certainly not less than that resulting from admission of evidence of other types of criminal behavior. In fact, it has been argued that a blanket exception for the admission of prior sexual offenses "appears extremely un-

Because we reject the lewd disposition rationale for approving admission of the testimony in question, our task is to determine if it falls within some other, acceptable exclusion from the rule. As stated in *Wright,* 191 N.W.2d at 640, "There must be some factual issue raised to permit evidence of other crimes under the noted exceptions." There is no issue here as to the offender's motive or intent in committing the acts charged. The offender's mental state inhered in the acts themselves. *See State v. Marvin,* 197 Iowa 443, 444, 197 N.W. 315, 316 (1924). For the same reason, absence of mistake or accident was not a legitimate reason for introducing the testimony in this case.

Nor do we believe the evidence was admissible to show a common scheme or system of criminal activity. The fact that defendant committed crimes of the same nature against the two girls is insufficient to bring the testimony within that exception. *See Wright,* 191 N.W.2d at 641. Testimony regarding the Ames incidents would neither serve to show that one crime was "dependent upon or connected with" the other, *id.,* nor would it "complete the story of the crime on trial by proving its immediate context of happenings near in time and place," *State v. Wright,* 203 N.W.2d 247, 251 (Iowa 1972). Hence, the only basis for our applying the common scheme exception in this case would be an assumption that the accused was compelled by some sort of internalized plan or character defect. *See Gregg, supra* note 1, at 226. That would place us perilously close to relying upon the defendant's criminal disposition to find relevance in the disputed testimony.

■ Rather, we hold the testimony was relevant here to establish the identity of the defendant as the perpetrator of the offense. Identity of the assailant was apparently the principal issue at trial. Although the prosecutrix was able to assist in the completion of a composite drawing of a bearded assailant which bears some resemblance to defendant, picked defendant's photograph from an array and also picked defendant in a line-up, she also incorrectly described defendant as having orange hair and facial hair. Furthermore, she stated that he was wearing blue jeans on the day of the incident when in fact it appears he had been wearing blue-and-white-striped bib overalls. Also, defendant presented alibi testimony which accounted for his whereabouts during most of the time span within which the incident allegedly occurred.

Testimony regarding the Ames incidents tended to prove the identity of defendant as the same person who committed both crimes because of the similarity of the acts involved and the method by which they were accomplished. *See Schlak,* 253 Iowa at 116–17, 111 N.W.2d at 291; *State v. James,* 217 Kan. 96, 96–99, 535 P.2d 991, 992–94 (1975); *Barnett v. State,* 104 Ohio St. 298, 299–304, 135 N.E. 647, 648–49 (1922) (quotation from court of appeals opinion). *See generally* McCormick, *supra,* § 190, at 449, 451; 29 Am.Jur.2d *Evidence* § 322 (1967). In both the Ames and Des Moines incidents, the man removed his clothing and induced the little girl to touch his genitals. Also, he either removed or had the girl remove her pants and then touched the girl's pubic area. Both girls were given small amounts of money and instructed to tell their families that they had found it. Moreover, the victim of the Ames incidents also identified defendant as the assailant.[3]

usual in light of the intensely emotional nature of prosecutions for sex crimes which heightens the possibility of juror prejudice." Note, *Time for Change: Evidentiary Safeguards Needed in Trials for Sexual Offenses,* 11 Ind.L.Rev. 895, 895, 907 (1978).

**3.** We note that a clinical psychologist testified at the hearing on defendant's motion in limine in answer to a hypothetical question that the Des Moines incident revealed a greater degree of behavioral disturbance. His opinion was based on the fact that the Ames incidents involved conduct with a neighbor girl, whom defendant had known over an extended period of time, in the privacy of his home, while the Des Moines incident involved conduct with a stranger in a public place. However, the expert also testified that there was some likelihood that the same individual committed both offenses and that the likelihood increased if his condition had deteriorated in the interim.

II. While we agree with trial court's conclusion that the testimony regarding the Ames incidents was relevant, we must also decide if trial court abused its discretion in determining whether any danger of unfair prejudice created by the evidence substantially outweighed its probative value. *State v. McDaniel,* 265 N.W.2d 917, 921 (Iowa 1978). As may be expected, this balancing "calls for a large measure of individual judgment about the relative gravity of imponderables." *State v. Johnson,* 224 N.W.2d 617, 621 (Iowa 1974) (quoting McCormick, *supra,* § 190, at 453). For this court to hold that the trial court abused its discretion, the complaining party must show that the trial court's action was "unreasonable in the light of attendant circumstances." *See State v. Gartin,* 271 N.W.2d 902, 910 (Iowa 1978) (authority omitted).

Defendant apparently contends that the admission of testimony regarding the Ames incidents was prejudicial because of an alleged paucity of other reliable evidence of defendant's guilt. In particular, he argues that the State offered no evidence to independently corroborate the prosecutrix's testimony and that her description of the assailant did not entirely match defendant's appearance. He also argues that the identification procedures employed by the police "smacked" of police intent to prove defendant's involvement and that defendant adequately established an alibi. Defendant's argument is untenable. The weight and credibility to be given to the prosecuting witness's testimony was a factual issue for the jury. *McDaniel,* 265 N.W.2d at 921. Moreover, a purported showing of a paucity of evidence does not prove that trial court abused its discretion in balancing the probative value against prejudicial effect of a particular item of disputed evidence. Defendant cites no authority for this proposition, nor does our research reveal any. In fact, a lack of other relevant evidence may in some instances increase the probative value of the evidence available. *See, e. g., United States v. Woods,* 484 F.2d 127, 133, 135 (4th Cir. 1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974); *McDaniel,* 265 N.W.2d at 921; McCormick, *supra,* § 190, at 453. *See also* 1978 Ariz.St.L.J. 153, 169–70.

Also enhancing the probative value of the testimony was the fact that defendant's culpability was clearly shown with regard to the Ames incidents. His conviction for the previous crime was based upon a guilty plea. *See Johnson,* 224 N.W.2d at 620. In addition, we note that trial court was informed through depositions and defendant's motion in limine of three other girls to whom defendant possibly had exposed himself and offered money if they would disrobe. If substantiated, those incidents might have lent further probative value to the disputed testimony as evidence of a modus operandi, earmarking the defendant as the assailant in each case. However, because those incidents involved no participation by the victims, trial court discerned they were significantly dissimilar to the instant offense and exercised sound discretion in excluding reference to them at trial by its ruling on defendant's motion in limine. We also note that those incidents were different because they involved no touching. Finally, we consider the facts that the two witnesses were unrelated, lived in different cities and told about their experiences before there was opportunity for communication between one another. Thus, there was little likelihood of fabrication or collusion between the witnesses. *See State v. Spreigl,* 272 Minn. 488, 494, 139 N.W.2d 167, 171 (1965).

To be balanced against these indicia of probative value are the possibilities for prejudice which accompany testimony regarding a prior offense. Dean Wigmore has summarized the types of prejudice the general exclusionary rule seeks to avoid as follows:

(1) The over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts; (2) The tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offences;

. . . (3) The injustice of attacking one necessarily unprepared to demonstrate that the attacking evidence is fabricated . . . .

I J. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 194, at 650 (3d ed. 1940). *See. also Commonwealth v. Boulden,* 179 Pa.Super. 328, 343–44, 116 A.2d 867, 874 (1955). We believe that the probative value of the testimony of this one other victim outweighed the possibility of the first or second types of prejudice. Also, the fact that the testimony in question concerned a prior conviction diminishes the likelihood of prejudice in the third manner. Ordinarily, a defendant should not be surprised to learn that a prosecutor is aware of and may try to admit evidence of a prior conviction. Gregg, *supra* note 1, at 217.

Because trial court's ruling to admit the testimony cannot be termed unreasonable or an abuse of discretion, we vacate the court of appeals' decision and affirm the judgment entered in district court.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except HARRIS, J., who concurs in the result.