STATE of Iowa, Appellee,

v.

James Walter WALSH, Appellant.

No. 65864.

Supreme Court of Iowa.

April 21, 1982.

Douglas F. Staskal, State Appellate Defender's Office, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen. and Roxanne M. Ryan, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK and McGIVERIN, JJ.

LeGRAND, Justice.

This one-issue appeal challenges the introduction at defendant's trial of evidence concerning a prior crime. We affirm the judgment sentencing him to life imprisonment.

The body of Eleanor A. Jennings, a sixty-year-old widow, was discovered in her Carter Lake home on August 18, 1979. She had been strangled and had probably been sexually abused as well. Defendant came under suspicion because several witnesses identified him as the person who had been with Mrs. Jennings shortly prior to her death. He was subsequently charged with her murder, tried by a jury, and convicted.

Damaging evidence against defendant was supplied by D. Austin Roberts, a police officer from Tulsa, Oklahoma, who testified concerning a prior crime committed in Oklahoma under circumstances peculiarly similar to those in the instant case. As here, defendant was there charged with murder. He eventually entered a plea of guilty to the reduced charge of manslaughter in the first degree. The defendant claims the trial court abused its discretion in admitting Officer Roberts' testimony.

■ Ordinarily proof of a prior crime is inadmissible to show defendant's guilt at a later trial for another offense. *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979). As pointed out in *Cott*, there are well defined exceptions to this rule, permitting evidence of a prior crime to establish motive, intent, absence of mistake, a common scheme of criminal activity, and identity. *Id.*

■ The question as to when evidence of a previous crime is admissible is one of relevance. The purpose of the rule, as stated in several of our cases, is to exclude from the jury's consideration evidence which has no purpose except to show that defendant is a bad person and is more likely to have committed the crime for that reason. *Id.* at 326; *State v. Folkens*, 281 N.W.2d 1, 5 (Iowa 1979). If, however, such evidence tends to establish any issue embraced within the exceptions already noted, the relevancy test is satisfied. The State and de-

fendant agree that the general rule prohibits the admission of proof of other crimes under ordinary circumstances. They disagree only as to whether Officer Roberts' testimony is admissible as an exception to that rule.

■ In considering this question, we use a two-prong test. First, the evidence must be relevant to one or more of the issues for which exceptions are recognized, and second, its probative value must outweigh the prejudicial effect engendered by showing the defendant has committed other crimes. *Cott*, 283 N.W.2d at 328–29; *State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978). The admissibility of the evidence in the instant case depends on whether it is relevant to establish defendant's identity, and the jury was instructed to consider it only for that purpose.

Commission of one illegal act does not ordinarily tend to prove commission of a later similar act. Therefore evidence concerning the Oklahoma crime lacks relevance in establishing he murdered Mrs. Jennings unless the facts bring the case within an exception to the rule. The resolution of this question depends on whether the circumstances surrounding the Oklahoma crime are sufficiently similar to those present in the case now before us so that they may be said to point to defendant as the culprit who murdered Mrs. Jennings. To put it differently, are the circumstances of the Oklahoma crime relevant in identifying defendant as the murderer here?

This matter has long had the attention of courts. We find this statement of the problem in *McCormick's Handbook on the Law of Evidence*, § 190, at 449 (E. Cleary ed. 1972) (footnotes omitted):

[O]ther like crimes by the accused [must be] so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.

Without adopting the "signature" test, we said in *Cott*, 283 N.W.2d at 328:

Testimony regarding the [prior] incidents tended to prove the identity of defendant as the same person who committed both crimes because of the similarity of the acts involved and the method by which they were accomplished.

(Citations omitted).

Two approaches have evolved in deciding how much similarity needs to exist. One is the "signature" approach espoused by Professor McCormick and set out above. *E.g., Riddle v. State*, 264 Ind. 587, 598, 348 N.E.2d 635, 641 (1976); *State v. Garfole*, 148 N.J.Super. 127, 131, 372 A.2d 340, 342 (1977); *State v. Zimmerlee*, 261 Or. 49, 52–53, 492 P.2d 795, 797 (1972); *Commonwealth v. Morris*, 493 Pa. 164, 174–176, 425 A.2d 715, 720–21 (1981); *Collazo v. State*, 623 S.W.2d 647, 648 (Tex.Crim.App.1981); *see also People v. Haston*, 69 Cal.2d 233, 245–46 n.14, 444 P.2d 91, 99 n.14, 70 Cal. Rptr. 419, 427 n.14 (*dicta*); *Brafman v. State*, 38 Md.App. 465, 473, 381 A.2d 687, 691 (1978) (*dicta*). The other approach, an arguably less demanding one, permits other-crime testimony if the common circumstances are "strikingly similar," "peculiar and distinctive," or of a "like or unique nature." *E.g., Bloodworth v. State*, 233 Ga. 589, 591, 212 S.E.2d 774, 777 (1975) (prior act must be very similar); *People v. Sievers*, 56 Ill.App.3d 880, 887, 14 Ill.Dec. 509, 514, 372 N.E.2d 705, 710 (Craven, J. dissenting) (recognizing "peculiar and distinctive" and "strikingly similar" approach as less demanding); *State v. Ellis*, 208 Neb. 379, 391, 303 N.W.2d 741, 750 (1981) (prior crime must be reasonably similar); *Sanford v. State*, 76 Wis.2d 72, 81, 250 N.W.2d 348, 351 (1977) (prior crime need only be of a "like or unique nature").

■ We doubt if there is as much difference between the two as some suggest. Certainly it is one of only slight degree. In any event we believe the better rule is to admit evidence of a prior crime upon a showing of "strikingly similar" circumstances or those of a "unique nature."

■ We come now to a discussion of the record before us in the instant case. The evidence of Officer Roberts, admitted over timely objection, established the circumstances surrounding a Tulsa homicide. Defendant was charged there with murder and eventually entered a guilty plea to first degree manslaughter. The following similarities between the Tulsa crime and the murder of Mrs. Jennings appear:

1. Both victims were widows, approximately sixty-years old.

2. Both were previously acquainted with defendant.

3. In each case defendant and victim had been drinking together in a tavern and defendant escorted victim home.

4. In each case the victim died of strangulation.

5. In each case the body was left in identical position—lying on stomach, nude from waist down, legs spread.

6. In each case a pair of panties was draped over victim's lower legs.

7. In each case fecal matter, apparently applied by hand, was on the victim's legs.

Defendant argues that these are so commonplace in crimes of this type that their presence is to be expected. They do not, he says, point to him as the guilty party. This is true as to some of the listed similarities, but there are others which are so strikingly similar, bizarre, and unique that they are not commonplace; on the contrary they are so peculiar and distinctive that their relevance on the question of identity is almost beyond dispute.

We refer particularly to the manner in which panties were draped across each victim's legs and the presence of fecal matter on each victim at approximately the same body location, in each case apparently applied by hand. These are not usual and ordinary circumstances nor can they be explained away as the product of chance or coincidence. In addition we mention, too, that the other similar circumstances, even if not alone sufficient, may nevertheless be relied on to buttress the argument for admissibility. *See People v. Haston*, 69 Cal.2d

233, 245, 444 P.2d 91, 99, 70 Cal.Rptr. 419, 427 (1968). After full consideration of all the circumstances, we hold the evidence of Officer Roberts was properly received as relevant on the question of identity.

This leads us to the next question: Is the probative value of this evidence outweighed by its potential prejudice? This, too, we decide against defendant. The evidence is indeed damaging. It points an accusing finger at defendant and unquestionably was a crucial factor in the jury's determination of guilt; but evidence is not prejudicial simply because it is damaging.

We discussed "prejudice" as here used in *State v. Cott*, 283 N.W.2d at 329–30, as follows:

> To be balanced against [the] indicia of probative value are the possibilities for prejudice which accompany testimony regarding a prior offense. Dean Wigmore has summarized the types of prejudice the general exclusionary rule seeks to avoid as follows:
>
> (1) The over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts; (2) The tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offences; ... (3) The injustice of attacking one necessarily unprepared to demonstrate that the attacking evidence is fabricated....

Of these three dangers, we eliminate the second because the record shows defendant *was* punished for the other offense. We disregard, too, the third because, as we said in *Cott*, one can hardly be surprised by the use of prior convictions. 283 N.W.2d at 330. This leaves only the argument about the "over-strong tendency to believe defendant guilty" because he committed the prior offense.

■ The task of weighing the danger of prejudice against the probative value always involves a balancing process, a matter concerning which the trial court must exercise sound judgment and discretion. *Cott*, 283 N.W.2d at 329; *State v. Johnson*, 224 N.W.2d 617, 621 (Iowa 1974). As the decision rests on sound trial court discretion, competing arguments can always be made as to how that discretion should have been exercised. In the instant case, we find no abuse of discretion and we hold Officer Roberts' testimony was properly received.

■ We mention briefly several other objections raised to the introduction of Officer Roberts' testimony. Defendant argues the Oklahoma crime was too remote in time to be relevant. The time lapse between the two was three-and-one-half years. During some of that interval, however, defendant was in prison. He was not released until September, 1978. Thus the period of opportunity between the two crimes becomes less than one year. *See Sanford v. State*, 76 Wis.2d 72, 81–84, 250 N.W.2d 348, 351 (1977). We quote from that opinion:

> Our court has held that the probative value of a prior incident "depends in part upon its nearness in time, place, and circumstances to the alleged crime or element sought to be proved." Remoteness in point of time does not necessarily render evidence irrelevant "... but it may do so where the lapsed time is so great as to negative all rational or logical connection between the fact sought to be proved and the remote evidence offered in proof thereof."
>
> . . . .
>
> In the case before us, the trial court held that the evidence of the prior incident, one and one-half years earlier in point of time, was not so remote in time as to render it without probative value.

We agree with that finding, but also not that any issue as to remoteness of the prior incident is almost completely defused by the fact that during the time gap between the prior incident and the rape, defendant was in confinement in a correctional institution.

. . . .

Thus the defendant returned to the same neighborhood to repeat the same plan or pattern of conduct at very nearly his earliest opportunity so to do. With the

element of opportunity to repeat added, the time span between the prior incident and the present criminal offense becomes a matter of days, not months or years.

After discounting time spent in the penitentiary, the time interval between crimes in *Sanford* was much shorter than in the instant case. We refuse to say, however, that a one-year period of opportunity between offenses makes Officer Roberts' testimony irrelevant as a matter of law. We reject defendant's argument on this ground.

Defendant also urges us to reverse because the Oklahoma crime (manslaughter) is not similar to the one in the present case (murder). Again we disagree. Both crimes are homicides; both involved unlawful death by violent means; and both were committed in the same strikingly similar manner. The fact they did not result in convictions for the same degree of homicide does not detract from the similarity of the crimes or the distinctive character of the circumstances surrounding them.

Finding no reversible error, we affirm the judgment.

AFFIRMED.