STATE of Iowa, Appellee,

v.

Donald Eugene NEWMAN, Appellant.

No. 67407.

Supreme Court of Iowa.

Nov. 24, 1982.

Francis C. Hoyt, Jr., Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Teresa Baustian, Asst. Atty. Gen., and Dan L. Johnston, Polk County Atty., for appellee.

Considered by LeGRAND, P.J., and UHLENHOPP, HARRIS, McCORMICK, and McGIVERIN, JJ.

UHLENHOPP, Justice.

This appeal involves five issues which arose in the prosecution of defendant Donald Eugene Newman on charges of first-degree kidnapping and third-degree sexual abuse. We will relate the facts in our consideration of the separate issues. Some of the issues we determined in *State v. Newman*, 326 N.W.2d 788 (Iowa 1982) (*Newman I*).

I. *Lineup.* The pretrial lineup involved in this case was the same lineup involved in *Newman I.* The facts in the two cases are sufficiently similar to make the decision of this issue in that case determinative here. Based on that decision, we hold that defendant's present contention is untenable, including his contention relating to lack of counsel. *See State v. Watts,* 244 N.W.2d 586, .589 (Iowa 1976) (following *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)).

II. *Evidentiary rulings.* One of the contested issues in the trial of this case was the identity of the individual who committed the offense. In different counts the information charged that defendant committed similar offenses on three separate occasions with three different victims, one involving J.E.L. on February 25, 1980; another—the present one—involving M.A.B. on February 27, 1980; and a third involving Y.G. on March 27, 1980. At defendant's request, the three occurrences were separated for trial. The first of the three occurrences was not brought up in the present trial.

Defendant was first convicted in *Newman I* on the charges involving Y.G. Over defendant's objection at the present trial involving M.A.B., the trial court allowed the State to introduce testimony by Y.G. that Newman was the individual who victimized her on March 27, 1980. The court admitted this testimony on the issue of the identity of M.A.B.'s assailant. Defendant claims this was error.

We faced a similar problem in a case involving sex acts with a child in Des Moines. *State v. Cott,* 283 N.W.2d 324 (Iowa 1979). We stated:

> In reviewing trial court's exercise of discretion in admitting the testimony regarding defendant's prior offense, we first consider the bases upon which relevance of the evidence may be found. The general rule is that "one crime cannot be proved by proof of another." The purpose of the rule is to exclude from the jury's consideration evidence which has no relevancy except to show that the defendant is a bad person and thus likely committed the crime in question. Consequently, evidence which is relevant to prove some fact or element in issue other than the defendant's criminal disposition escapes the rule's prohibition. We have accordingly recognized certain categories of permissible objectives for proof of prior criminal acts:
>
> (1) motive, (2) intent, (3) absence of mistake. or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, (5) identity of the person charged with the commission of the crime.

*Id.* at 326 (citations omitted). After rejecting other bases of admissibility, we held that evidence of prior instances involving sex acts in Ames with another child was

relevant on the identity issue in the Des Moines case. We said:

Rather, we hold the testimony was relevant here to establish the identity of the defendant as the perpetrator of the offense. Identity of the assailant was apparently the principal issue at trial. Although the prosecutrix was able to assist in the completion of a composite drawing of a bearded assailant which bears some resemblance to defendant, picked defendant's photograph from an array and also picked defendant in a line-up, she also incorrectly described defendant as having orange hair and facial hair. Furthermore, she stated that he was wearing blue jeans on the day of the incident when in fact it appears he had been wearing blue-and-white striped bib overalls. Also, defendant presented alibi testimony which accounted for his whereabouts during most of the time span within which the incident allegedly occurred.

Testimony regarding the Ames incidents tended to prove the identity of defendant as the same person who committed both crimes because of the similarity of the acts involved and the method by which they were accomplished. In both the Ames and Des Moines incidents, the man removed his clothing and induced the little girl to touch his genitals. Also, he either removed or had the girl remove her pants and then touched the girl's pubic area. Both girls were given small amounts of money and instructed to tell their families that they had found it. Moreover, the victim of the Ames incidents also identified defendant as the assailant.

*Id.* at 328. We also held that the probative value of the evidence outweighed its prejudicial effect. *See also State v. Walsh,* 318 N.W.2d 184 (Iowa 1982) (two homicides).

Defendant claims that the Y.G. and M.A.B. instances are too dissimilar to make one of them relevant proof of identity in the other one. He points out that "[M.A.B.'s] assailant lured her into a pickup truck and forced her to perform oral sex upon him while he continued to drive around," and that "[Y.G.'s] assailant, on the other

hand, picked her up in a car, drove a long distance to a secluded area, threatened to shoot her, removed her from the car, sodomized her and dropped her off at a place other than where she was picked up."

The two instances, however, have several similarities: one girl was thirteen and the other was fifteen; both crimes occurred in the near north side of Des Moines, Iowa; they occurred within a month of each other; they both occurred between 8:00 and 8:30 p.m.; both girls were walking alone on the street when approached; in each instance the assailant drove beside the girl, flashed a star-shaped badge mounted in a dark, leather-like wallet, and claimed to be a police officer; in both instances the assailant initiated the sexual abuse in the same manner by unzipping his trousers, taking out his penis, putting the victim's hand on it, and telling her to masturbate him; each time the assailant pushed the victim's head down to his penis and forced or attempted to force her to commit fellatio; each time he told the girl when he released her he was from California; both times the victims gave similar initial identifications of their assailants and both identified the same individual in the lineup; each girl was returned to the place she was picked up or indicated she would be picked up; both times the assailant was wearing a short leather jacket and a gold watch.

▮ We conclude that the trial court did not err in holding that the probative value of the one instance was sufficient for admissibility on the issue of identity in connection with the other instance. We likewise hold, as in *Cott* and *Walsh,* that the probative value outweighed the prejudicial effect of the evidence.

The State had to establish, of course, that present defendant Newman was Y.G.'s assailant; otherwise her testimony would be irrelevant. *See Cott,* 283 N.W.2d at 328 ("Moreover, the victim of the Ames incidents also identified defendant as the assailant."). In addition to Y.G.'s testimony, the state introduced circumstantial evidence through the testimony of Jerry Jones and

another witness which tended to establish this essential factor. This testimony included statements about a Monza Spyder automobile and a star-shaped badge in a black notebook.

We hold that the trial court did not err in the challenged evidentiary rulings.

III. *Reporting final arguments.* The following occurred prior to jury arguments at the trial:

Mr. McKinney [defense attorney]: Your Honor, one other record. The Defendant has just informed me that he would like to have closing arguments reported and transcribed by the court reporter.

The Court: That will be denied. The reporter has to work on the instructions. You can stop the arguments at any time you choose and call the Court. I do not intend to be on the bench during arguments. The reporter has to complete these instructions so he can't do that while he's reporting.

Mr. McKinney: Well, we would take exception—

The Court: If you want to hire a reporter and pay for it—as I understand it, this is an indigent case, is it not?

Mr. McKinney: Yes, it is, Your Honor.

The Court: You are court appointed?

Mr. McKinney: Yes, I am, Your Honor.

The Court: If Mr. Newman wants to pay for the court reporter, he has a right to do that, but I don't intend to have Mr. Stanton do it.

Mr. McKinney: We take exception to that, Your Honor.

The Court: Very well. If you do want—you note that any time you have controversy as to arguments, the Court is available in chambers. I do not intend to sit on the bench during arguments.

Mr. McKinney: So you overrule our motion then to have it recorded?

The Court: Yes, I am.

Mr. McKinney: Your Honor, one other motion. We would request that you do stay on the bench in case anything would happen. It would be easier for a record to be made.

The Court: Very well, I'll sit on the bench.

Also subsequently:

The Court: Is there some record to be made before I read the instructions?

Mr. McKinney: Yes, Your Honor. In conference with my client, Mr. Newman, we both believe that closing arguments should be recorded. We had that right. We made the objection to have it recorded. It was overruled by the Court, and at this time, Your Honor, we would—Mr. Newman, the Defendant, would like to move for a mistrial on that basis, that he was denied his right to have closing arguments recorded. He wants to preserve any possibility of any error as to closing argument.

The Court: Let the record show, Mr. Reporter, that the motion for mistrial on the basis of not reporting the closing arguments is overruled. That's a matter that is discretionary with the Court in his opinion.

■ Rule 18(4) of the rules of criminal procedure states in part: "Upon request of any party, final arguments shall be reported." *Cf. State v. Whitfield,* 212 N.W.2d 402 (Iowa 1973) (prior to rule 18(4)). The trial court erred in overruling defendant's request to have the arguments reported.

The State argues that in view of subsequent happenings, defendant did not sustain prejudice from the court's ruling. The following occurred regarding the prosecutor's jury argument:

Mr. McKinney: One other factor, Your Honor. I believe at one point Mr. Berry made reference to the number of children the jurors had. That reference was made in light I believe as getting to credibility of children. He made the statement that he counted the number of children the jurors had. At that time I objected, saying that was improper closing argument.

The Court: The Court ruled it was not prejudicial and directed him to go ahead with his argument.

Mr. McKinney: And we would also make a motion for mistrial upon that basis.

The Court: That motion is overruled. Are there any other exceptions to anything that occurred during the arguments that you wish to bring up at this time? The Court was on the bench during arguments.

Mr. McKinney: That's all the record we have, Your Honor.

An important distinction appears at this point. Defendant does not contend on the present record that we must reverse because the trial court erred in its ruling on his objection *to the prosecutor's argument to the jury.* He argues that the record we have quoted is inadequate for him to show the trial court erred in its ruling on his objection to the prosecutor's argument and it is inadequate because the trial court erred in overruling his motion *to have the arguments reported.*

■ The State responds that defendant could have obtained a better record of the prosecutor's argument to the jury by a bill of exceptions under rule 23.1 of the criminal rules. Doubtless defendant could have proceeded under that rule, but the question is whether he was required to do so. When a criminal rule states unequivocally that upon request of a party the final arguments "shall be reported," can a party be compelled to employ the less satisfactory device of a bill of exceptions in order to disclose a claimed error? We think not.

The question, then, comes down to whether defendant was harmed as a result of the court's refusal to have the arguments reported. The record which was in fact made affirmatively shows that defendant had but one complaint about the prosecutor's jury argument. After the jury arguments defense counsel repeated that complaint and the court inquired whether defense counsel had "any other exceptions to anything that occurred during the arguments that you wish to bring up at this time?" Defense counsel responded, "That's all the record we have, Your Honor."

We turn, therefore, to the one complaint defense counsel did repeat after the jury arguments. He stated that during the arguments the prosecutor "made reference to the number of children the jurors had." Also, "That reference was made in light I believe as getting to credibility of children. He made the statement that he counted the number of children the jurors had." The trial court recalled that it had ruled the argument was not prejudicial and directed the prosecutor to go ahead with his jury argument.

On the question of prejudice, defendant contends that a trial court's refusal to have the arguments reported places an appellate court in a position of being unable to ascertain whether harm occurred from improper argument to the jury. This contention has merit, and if we were in doubt about prejudice because we did not have a verbatim report of the arguments, we would be inclined to give the defendant the benefit of the doubt on the prejudice question. Here however the record affirmatively shows what occurred during the jury arguments, sufficiently to allow us to rule with safety on the matter of prejudice. Trial counsel for defendant stated what occurred during argument. The trial court then inquired whether defendant had any further exceptions to anything that occurred, and counsel stated that was all the record he had. He did not state that further objectionable arguments were made, or that he was unable to repeat them.

■ We hold that the prosecutor's argument to the jury should probably not have been made, but that the trial court acted within its discretion in overruling defendant's motion for mistrial based on that argument. *State v. Lyons,* 210 N.W.2d 543, 548–49 (Iowa 1973); *State v. Vickroy,* 205 N.W.2d 748, 750–51 (Iowa 1973). Prejudice does not appear in the refusal to have the arguments reported.

IV. *Confinement or removal.* As to the kidnapping conviction, one element of kidnapping is that the offender "either confines a person or removes a person from one place to another...." Iowa Code § 710.1. Defendant contends that the facts do not show confinement or removal of the girl beyond that which is incidental to sexual

abuse. We recently reviewed our decisions on this point in *State v. Mead,* 318 N.W.2d 440, 443–45 (Iowa 1982). *See also* Note, *Kidnapping in Iowa: Movements Incidental to Sexual Abuse,* 67 Iowa L.Rev. 773 (1982). After summarizing the principles of statutory construction, we stated the applicable rule thus in *State v. Rich,* 305 N.W.2d 739, 745 (Iowa 1981):

> Applying these principles of construction, we conclude that our legislature, in enacting section 710.1, intended the terms "confines" and "removes" to require more than the confinement or removal that is an inherent incident of commission of the crime of sexual abuse. Although no minimum period of confinement or distance of removal is required for conviction of kidnapping, the confinement or removal must definitely exceed that normally incidental to the commission of sexual abuse. Such confinement or removal must be more than slight, inconsequential, or an incident inherent in the crime of sexual abuse so that it has a significance independent from sexual abuse. Such confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense.

The jury could find the facts on this issue to be as follows. M.A.B., a seventh-grade student, had walked to a friend's house after school on February 27, 1980. About 8:00 p.m., during M.A.B.'s walk home, defendant pulled up beside her in a pickup truck and held out a star-shaped badge. He told her he was a police officer looking for drugs, called her over to the pickup, and asked her to get in. Driving on, defendant told the girl to lift up her shirt and brassiere so that he could see whether she was carrying drugs there; she complied.

Defendant told the girl to pull down her pants, and she started to do so but stopped. Continuing his masquerade as a policeman, defendant told her he would take her to the police station, and she asked to be taken there. They had ridden on Eighth Street to Jefferson Avenue, and were proceeding north on Ninth Street.

Defendant did not take the girl to the police station but, putting his arm around her neck and choking her, he again told her to pull down her pants. She screamed. He told her to stop screaming or he would choke her. She took down her pants and undergarment, and defendant put a finger in her vagina. Defendant unzipped his trousers and took out his penis. He grabbed the victim's hand and put it around his penis, telling her to squeeze it. We may refer to these acts as the first sex incident.

Defendant continued to drive north until he reached Prospect Road, which has street lights and police patrol but does not have dwellings. While driving on Prospect Road, defendant grabbed the girl's head, forced it down into his lap, and told her to commit fellatio. She did so. He forced her to continue this until he ejaculated. He then allowed her to sit up and pull up her clothing. They were still driving on Prospect Road. We may refer to these acts as the second sex incident.

Defendant next returned the girl to the corner of Eighth Street and Washington Avenue, where he released her near the place he picked her up. At the end he told her he was from California, and if she did not say anything, he would not say anything.

■ The present facts on confinement and removal are not as strong as in *Newman I.* We think, however, that they are considerably closer to those in our decisions upholding kidnapping convictions, *State v. Holderness,* 301 N.W.2d 733 (Iowa 1981); *State v. Rich,* 305 N.W.2d 739 (Iowa 1981); and *State v. Knupp,* 310 N.W.2d 179 (Iowa 1981), than those in the decisions reversing convictions. *State v. Marr,* 316 N.W.2d 176 (Iowa 1982); *State v. Mead,* 318 N.W.2d 440 (Iowa 1982) (kidnapping and burglary). Defendant's acts in enticing the girl into a vehicle, continued driving, and taking her onto Prospect Road which is unoccupied by dwellings, substantially exceed those as in *Marr* and *Mead.* His acts were not merely incidental to sexual abuse; they also in-

creased the risk of harm to the girl and they lessened the risk of detection. We hold that substantial evidentiary support exists for the jury's finding of kidnapping.

V. *Included offense.* Defendant contends finally that the sexual abuse is included in the kidnapping and comes within the proscription of section 701.9 of the Code and rule 6(2) of the criminal rules.

A. Section 701.9 provides:

No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

Rule 6(2) states:

Upon prosecution for a public offense, the defendant may be convicted of either the public offense charged or an included offense, but not both.

The trial *information* charged sexual abuse and kidnapping in general terms only. Count I alleged that defendant did "sexually abuse [M.A.B.] in the third degree, on or about the 29th of February, 1980," and Count II alleged that he did "without consent or authority, confine or remove from one place to another [M.A.B.], with intent to subject her to sexual abuse and, as a consequence, [M.A.B.] was intentionally subjected to sexual abuse, on or about the 29th day of February, 1980."

At trial, the *evidence* showed that although first and second sex incidents occurred, they occurred on one ride and one overall occasion.

In its *instructions* to the jury, the trial court did not separate the two sex incidents; the court stated the alleged sexual abuse and kidnapping in general terms as in the information.

In its *verdicts,* the jury did not find separately on the two sex incidents. It found simply that defendant was guilty of sexual abuse in the third degree and kidnapping in the first degree, and it did not render special verdicts or answer interrogatories.

B. For a lesser crime (here, sexual abuse) to be included in a greater offense (kidnapping), it must be included both legally and factually. *State v. Sangster,* 299 N.W.2d 661, 663 (Iowa 1981). Legally, sexual abuse is included in kidnapping under the portion of the kidnapping statute involved here. Iowa Code § 710.2 ("Kidnapping is kidnapping in the first degree when the person kidnapped, as a consequence of kidnapping . . . is intentionally subjected to . . . sexual abuse."). Sexual abuse is also included in kidnapping as defendant was charged, tried, and convicted. Factually, according to the State's evidence the sexual abuse occurred during the course of the kidnapping. Prima facie, therefore, the sexual abuse is included in the kidnapping and could not be the subject of a separate conviction. We stated in *State v. Whitfield,* 315 N.W.2d 753, 755 (Iowa 1982):

The method in which the first degree 'kidnapping charge was alleged and proven here under section 710.2 was that, as a consequence, the victim was intentionally subjected to sexual abuse. The sexual abuse to which she was subjected comprised and was made up by the elements of the second count. As alleged and proven here second degree sexual abuse was a lesser included offense of kidnapping in the first degree. Under Iowa R.Crim.P. 6 defendant's conviction of kidnapping will stand; defendant's conviction of the lesser included offense became subsumed in the kidnapping conviction and cannot stand. We affirm defendant's conviction of kidnapping in the first degree but reverse his conviction of sexual abuse in the second degree.

C. The State argues, however, that since two sex incidents occurred during the ride, the jury could base a finding of sexual abuse on one of those incidents and separately base a finding of first-degree kidnapping on the second incident, citing *State v. Holderness,* 301 N.W.2d 733 (Iowa 1981). The situation was different in that case than it was here, however, as demonstrated by the following passage from that opinion:

In his final two assignments, defendant asserts trial court erred in convicting and sentencing him on both the charged offenses. This assertion is predicated upon the argument that, under the facts of this case, sexual abuse in the second degree constituted a lesser included offense of kidnapping in the first degree. *See* § 701.9, The Code (merger of lesser included offenses).

In its written findings, trial court, however, carefully delineated the facts which supported the commission of each separate offense. We agree that the facts of this case demonstrate the occurrence of two separate crimes in place and time. As defendant himself points out, one incident of sexual abuse took place at the cemetery, prior to the asportation of the victim. Thereafter, she was transported from that location into the countryside; this confinement and removal, as stated in the preceding division, was sufficient to constitute the offense of kidnapping. During this latter period, the victim was subjected to other incidents of sexual abuse. Under these facts, the sexual abuse which took place at the cemetery constituted a distinct and separate offense from the acts of kidnapping and sexual abuse which subsequently occurred. As such, trial court did not err in convicting and sentencing defendant for both crimes.

*Id.* at 740.

The separation of the two *Holderness* incidents "in place and time" was considerably greater than here. The two *Holderness* convictions came within rule 6(1) of the criminal rules which states:

When the conduct of a defendant may establish the commission of more than one public offense arising out of the same transaction or occurrence, the defendant may be prosecuted for each of such offenses. Each of such offenses may be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise. Where the public offense which is alleged carries with it certain lesser included offenses, the latter should not be charged, and it is sufficient to charge that the accused committed the major offense.

■ D. In the present case the prosecutor did not separately charge and try defendant, and the jury did not separately convict him, for sexual abuse based on the one of the sex incidents; and the prosecutor did not separately charge and try defendant, and the jury did not separately convict him, for kidnapping based on the other sex incident. If that had occurred we would be required to determine whether on this evidence defendant could legally be so tried and convicted under rule 6(1)—a question we do not now decide. Instead, the prosecutor, trial court, and jury viewed the ride in the vehicle and the incidents which occurred during the ride as one overall occurrence. *Cf. State v. Duncan,* 312 N.W.2d 519 (Iowa 1981) (analogous view taken in burglary case). We hold that when an occurrence is thus treated as a whole, *Whitfield* applies and *Holderness* does not. *Newman I; State v. Folck,* 325 N.W.2d 368 (Iowa 1982). *See also State v. Harlow,* 325 N.W.2d 90 (Iowa 1982); *State v. Wales,* 325 N.W.2d 87 (Iowa 1982). The sexual abuse conviction cannot stand.

We thus uphold the kidnapping conviction but nullify the sexual abuse conviction.

AFFIRMED IN PART, REVERSED IN PART.