STATE of Iowa, Appellee,

v.

William CASADY, Appellant.

No. 91–1577.

Supreme Court of Iowa.

Oct. 21, 1992.

---

Linda Del Gallo, State Appellate Defender, and Elizabeth E. Quinlan, Asst. Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., John P. Sarcone, County Atty., and Steven Foritano, Asst. County Atty., for appellee.

SNELL, Justice.

Appellant, William Casady, appeals his conviction of assault with intent to commit sexual abuse. Casady contends the trial court erred in permitting testimony about facts surrounding his prior crimes. Casady also contends the evidence produced by the State was insufficient to support the bench trial finding of an intent to commit sexual abuse beyond a reasonable doubt. We affirm.

On February 18, 1991, S.O., a thirteen-year-old girl, was walking near her home in Des Moines, Iowa. Casady, who had stopped his car in a church parking lot, asked S.O. for directions to the freeway. S.O. said that she could not advise Casady, but that her stepfather was at home and could help.

Casady followed S.O. in his car as she walked home. When S.O. approached the driveway of her home, Casady motioned for her to come to the car to show her a piece of paper. S.O. approached the passenger side of the car to see the paper. When S.O. leaned next to the car, Casady reached through the window. He grabbed S.O. by the arms and tried to pull her into his car. She does not remember if Casady said anything to her at that time. S.O. screamed and tried to pull away.

Clifford Ketch, a friend of S.O.'s family, saw Casady attempting to pull S.O. into his car. Ketch rammed the rear of Casady's car with his own car. Casady then released S.O. and she ran to Ketch's car. Casady attempted to escape but became stuck after his car struck an embankment in a neighbor's yard.

On March 21, 1991, the State filed a trial information charging Casady with kidnapping in the third degree in violation of Iowa Code section 710.4 (1991) and assault with intent to commit sexual abuse in violation of Iowa Code section 709.11. Casady waived his right to a jury trial. Following a bench trial, the trial court dismissed the charge of kidnapping and found Casady guilty of assault with the intent to commit sexual abuse. Casady filed a motion for new trial. On September 26, 1991, the trial court entered judgment and sentenced Casady to prison for a term not to exceed two years. Casady has appealed.

I. Casady contends the trial court erred in permitting testimony about the facts surrounding two prior convictions. The State presented evidence that in May 1976, Casady attempted to sexually assault a thirty-year-old woman in Nebraska. The testimony was given by a police officer who questioned Casady about the incident. Casady asked the woman to enter his car; the woman refused. Casady got out of his car and struck the woman. She was knocked to the street, lying on her stomach. Casady then pulled down her pants and underwear. A passer-by intervened, and Casady fled. Once Casady was apprehended and taken into custody, he stated to the testifying officer that he intended to have sex with the woman. Casady pleaded nolo contendere to assault with intent to inflict a bodily injury and was sentenced to ten years in prison. He was paroled in Missouri in August 1979.

The State also presented the testimony of Roslyn DeMoss. DeMoss testified that on October 4, 1979, in Kansas City, Missouri, Casady struck the rear of DeMoss's car while he followed her home from a convenience store. DeMoss parked her car and approached Casady's car. Casady was

holding his driver's license to show De-Moss, but kept the license inside the car so DeMoss would need to lean into the car to see it. As she leaned in, Casady grabbed her neck and pulled her into his car. Casady drove to a remote area and repeatedly sexually assaulted DeMoss in his car. De-Moss was seventeen years old at the time. Casady subsequently pleaded guilty to kidnapping with intent to terrorize or cause injury and was sentenced to fifteen years in prison. Casady was paroled in Iowa on November 20, 1989.

■ Evidence of other crimes, wrongs, or acts is admissible under certain circumstances. Iowa Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. -

The key is "whether the challenged evidence is relevant and material to some legitimate issue other than a general propensity to commit wrongful acts." *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988); *State v. Barrett*, 401 N.W.2d 184, 187 (Iowa 1987). If the evidence is relevant, then the court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Plaster*, 424 N.W.2d at 229; *State v. Kern*, 392 N.W.2d 134, 136 (Iowa 1986). In the process of employing this two-step analysis, the trial court must exercise its discretion. We will reverse its decision only when we find a clear abuse of discretion. *Plaster*, 424 N.W.2d at 229; *Kern*, 392 N.W.2d at 136.

■ We first consider whether the evidence concerning Casady's two prior convictions is relevant. In the present case, the crucial issue is whether Casady intended to commit sexual abuse when he attempted to pull S.O. into his car. Casady argues that the facts surrounding the 1976 and 1979 incidents are irrelevant as bearing on his intent to commit sexual abuse. Casady contends the facts of the prior crimes are too dissimilar and the incidents too remote in time to bear on Casady's intent when he grabbed S.O. We find neither argument persuasive; the prior crimes meet the test of relevancy as bearing on Casady's intent to commit sexual abuse.

■ The basic test of relevancy is whether the evidence offered would make the desired inference more probable than it would be without the evidence. *State v. Engeman*, 217 N.W.2d 638, 639 (Iowa 1974). It follows that the facts of the prior crimes entered into evidence must be sufficiently similar to the assault upon S.O. so that it is reasonable to infer, from Casady's intent to commit sexual abuse in the earlier crimes, that Casady also had the intent to commit sexual abuse against S.O. *See State v. Spargo*, 364 N.W.2d 203, 209 (Iowa 1985); *State v. Fetters*, 202 N.W.2d 84, 92 (Iowa 1972); *State v. Coen*, 382 N.W.2d 703, 705 (Iowa App.1985).

Casady pleaded nolo contendere and guilty to the prior crimes. There are many factual similarities between the prior crimes and the present case. In all three cases Casady approached his victim in his car, accosted his victim in a public place, and attempted to force his victim to enter his car. In the DeMoss case and the present case, Casady displayed a paper to draw his victim close to his car, grabbed his victim through the open passenger-side window of his car, and attempted to pull his victim inside. In the DeMoss case and the present case, the victim was a teenaged girl.

■ The remoteness of evidence generally affects the weight rather than admissibility of the remote evidence. *State v. Maestas*, 224 N.W.2d 248, 251 (Iowa 1974). However, remoteness may render evidence irrelevant where the elapsed time is so great as to negate all rational or logical connection between the fact sought to be proved and the remote evidence offered to prove that fact. *Maestas*, 224 N.W.2d at 251; *Engeman*, 217 N.W.2d at 639. The lapse of time between the prior crimes and the present incident is indeed significant,

fifteen years and twelve years before the incident with S.O. However, Casady was incarcerated during most of this time. Casady's "period of opportunity" to commit crimes is considerably less. *State v. Walsh*, 318 N.W.2d 184, 187 (Iowa 1982). Only a few months passed between Casady's parole from his imprisonment from the 1976 crime and commission of the 1979 crime. Only about fifteen months passed between Casady's parole in November 1989 and his assault upon S.O. in February 1991. "[A]ny issue as to remoteness of the prior incident is almost completely defused by the fact that during the time gap between the prior incident and the [present offense], defendant was in confinement in a correctional institution." *Id.* at 187 (quoting *Sanford v. State*, 76 Wis.2d 72, 81–84, 250 N.W.2d 348, 352 (1977); *see also Coen*, 382 N.W.2d at 706. Coupled with the factual similarities, Casady's prior crimes are not too remote in time. The evidence was relevant and admissible.

■ The next question is whether the probative value of this testimony is substantially outweighed by the danger of unfair prejudice. *Plaster*, 424 N.W.2d at 229; Iowa R.Evid. 403. "Probative value" gauges the strength and force of the relevancy of the evidence presented; "unfair prejudice" has been defined as "an undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one." *Plaster*, 424 N.W.2d at 231. In balancing probative value and unfair prejudice as applied to other-crimes evidence, we have previously followed one commentator's suggestion:

> [B]alancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to over-mastering hostility.

*Plaster*, 424 N.W.2d at 232 (quoting *McCormick on Evidence* § 190, at 453 (E. Cleary 2d ed. 1972)).

The State's need of the evidence of prior crimes was great. The facts of the assault on S.O. provided no evidence of Casady's specific intent; Casady did not say anything of a sexual nature or touch S.O. in a sexual way. The lack of other evidence of Casady's intent enhances the probative value of the other-crimes evidence. *See State v. Cott*, 283 N.W.2d 324, 329 (Iowa 1979). It is clear that the other crimes actually occurred and that Casady was the actor. He pleaded nolo contendere to the 1976 charge and guilty to the 1979 charge, and both resulted in a prison sentence. *See Cott*, 283 N.W.2d at 329. As to the strength or weakness of the evidence of Casady's other crimes on the issue of whether Casady had specific intent to commit sexual abuse when he assaulted S.O., both of the prior crimes required a finding of specific intent to commit sexual abuse. The probative value of this evidence is further enhanced by the factual similarities to the assault against S.O.

■ There is less danger of unfair prejudice resulting from the use of the evidence in this case because Casady was tried to the court. The prejudicial effect of other-crimes evidence is reduced in the context of a bench trial. *State v. Williams*, 445 N.W.2d 408, 410 (Iowa App.1989). We find the probative value of the 1976 and 1979 crimes outweighs any possible prejudicial effect against Casady. The trial court did not abuse its discretion in admitting evidence of these crimes to prove Casady's intent to commit sexual abuse.

■ II. The testimony of the facts surrounding the sexual assault crimes Casady committed in 1976 and 1979 was the only evidence presented at trial relevant to whether Casady had the specific intent to commit sexual abuse when he assaulted S.O. on February 18, 1991. Casady did not engage in any act which would indicate that he planned to sexually abuse S.O.

Casady approached S.O. in his car, lured her to the window, and grabbed her arms in an attempt to pull her inside the car.

Casady did not make any sexual comment to S.O., touch her in a sexual manner, attempt to remove any clothing, or act in any other way which would indicate a plan to engage in sexual activity with S.O. Casady contends that the evidence of the prior crimes alone is insufficient to support a finding of guilt beyond a reasonable doubt of assault with intent to commit sexual abuse.

In other cases before Iowa appellate courts, the sufficiency of the evidence to support a finding of guilt beyond a reasonable doubt of assault with intent to commit sexual abuse has been examined. We pointed to a sexual comment made by the defendant to the victim, touching in a sexual way, the removal or request to remove clothing, or some other act during the commission of the crime that showed a desire to engage in sexual activity, to affirm the conviction. *See, e.g., Spargo,* 364 N.W.2d at 210 (evidence sufficient where defendant rubbed chest and groin of adolescent male coupled with evidence of defendant's prior sex acts with young boys); *State v. Maynard,* 379 N.W.2d 382, 383–84 (Iowa App. 1985) (evidence sufficient where defendant employee of state hospital seen climbing naked into bed with severely retarded female patient who was also naked).

In determining whether the evidence is sufficient to support a conviction, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis omitted); *State v. Robinson,* 288 N.W.2d 337, 339 (Iowa 1980). Judicial review must be based on all the evidence in the record. *Id.* at 340. The evidence must at least raise a fair inference of guilt as to each essential element of the crime. *State v. LaPointe,* 418 N.W.2d 49, 51 (Iowa 1988). Evidence which merely raises suspicion, speculation, or conjecture is insufficient. *Id.*

With respect to proof of intent, we have observed:

Intent is a state of mind difficult of proof by direct evidence. It may, however, be established by circumstantial evidence and by inferences reasonably to be drawn from the conduct of the defendant and from all the attendant circumstances in the light of human behavior and experience.

*State v. Erving,* 346 N.W.2d 833, 836 (Iowa 1984) (quoting *State v. Allnut,* 261 Iowa 897, 905, 156 N.W.2d 266, 271 (1968)).

One could infer from Casady's behavior that he harbored a wrongful intent of some kind when he assaulted S.O. However, there are no facts surrounding the assault which indicate that Casady had the specific intent to commit sexual abuse. The mere instinct or hunch that Casady intended to sexually abuse S.O. is insufficient to support a finding of guilt beyond a reasonable doubt.

We stated the standard to be applied to determine whether a defendant had the specific intent to commit sexual abuse in *State v. Radeke,* 444 N.W.2d 476, 478 (Iowa 1989):

The overt act must reach far enough towards the accomplishment, toward the desired result, to amount to the commencement of the consummation, not merely preparatory. It need not be the last proximate act to the consummation of the offense attempted to be perpetrated, but it must approach sufficiently near it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.

*Id.* (quoting *State v. Roby,* 194 Iowa 1032, 1043, 188 N.W. 709, 714 (1922)). In *Radeke,* the defendant made an appointment with a female real estate agent to see remote rural property. At the property, the defendant grabbed the agent around the waist from behind, put one hand over her mouth, and told her he would not hurt her if she did as he said. The defendant then told the agent to unbutton her blouse. She complied, but then pulled free. The defendant apologized and left. *Id.* at 477. The defendant challenged his conviction of assault with intent to commit sexual abuse

based on insufficient evidence. The defendant's words and actions, specifically, his request that the agent unbutton her blouse, the defendant's statement to police officers that he would have engaged in consensual sexual intercourse with the agent, and his use of planned deception to lure the agent to the property, were sufficient evidence to find the defendant guilty of intent to commit sexual abuse beyond a reasonable doubt. *Id.* at 478.

Although there is an absence of this type of evidence, when the evidence of prior crimes is considered a plethora of indication that a sex act was intended is presented.

The present case is indistinguishable from *Coen.* In *Coen,* the defendant challenged his conviction of kidnapping, in which assault with intent to commit a sexual abuse was an essential element. The defendant argued, as Casady does here, that absent an overt act which tended to establish an intent to engage in a sex act with the victim, evidence of prior crimes alone was insufficient to find guilt beyond a reasonable doubt. 382 N.W.2d at 708.

In *Coen,* the defendant punctured the tire of the victim's car while she shopped in a grocery store. When she returned to the car, the defendant, dressed in jogging attire, offered to change the tire for the victim. Afterward, he requested a ride from the victim which she felt obliged to grant. Once in the victim's car, the defendant threatened the victim with a knife, forcing her to drive to a remote area of the city. When they arrived, the victim escaped by running to a passer-by. *Id.* at 704–05. At the defendant's trial, evidence was admitted of a prior crime in which the defendant committed sexual assault. The facts were strikingly similar—the punctured tire, the appearance of jogging, the offer to change the tire, his request for a ride, and forcing the victim to drive at knifepoint to the same secluded area. *Id.* at 705.

The court of appeals found the evidence sufficient to uphold the conviction. Although no overt act, such as a sexual comment or threat, touching in a sexual manner, or the removal of clothing occurred which would suggest an intent to engage in sexual activity, the clear symmetry between Coen's prior crime and the circumstances surrounding the incident leading to the new charge against him established a modus operandi which would likely have ended with sexual assault had the victim not escaped. Modus operandi is "a distinct pattern or method of procedure thought to be characteristic of an individual criminally and habitually followed by him." *Plaster,* 424 N.W.2d at 231. The evidence of the prior crime was significantly probative of the defendant's intent to commit sexual abuse that it was sufficient alone to find guilt beyond a reasonable doubt. ·

Casady's assault on S.O. is equally similar to the 1979 crime he committed. Casady drew the victims to his car by holding up a piece of paper to the victims so they would need to lean into the car to see it. Casady grabbed the victims and pulled them into the car through the passenger window. The modus operandi was clearly parallel; the trial court could reasonably infer that if S.O. had not escaped, Casady would have continued with his plan and committed sexual abuse.

We believe our analysis and decision here is not in conflict with the decision of the federal district court in *Watson v. Nix,* 551 F.Supp. 1 (S.D.Iowa 1982). There the court granted a writ of habeas corpus releasing a prisoner serving a sentence for assault with intent to commit rape. The court held that the due process rights guaranteed the defendant under the fourteenth amendment were violated because there was no evidence of a sex crime intent and a robbery also took place which established a separate intent. In the case at bar there is admissible evidence of a sexual intent and an absence of any evidence showing an intent by defendant to inflict a different criminal act on S.O.

We find the evidence is sufficient to support the finding by the trial court that defendant is guilty of the crime of intent to commit sexual abuse. The conviction is affirmed.

AFFIRMED.

All Justices concur except McGIVERIN, C.J., who dissents and is joined by SCHULTZ and NEUMAN, JJ.

McGIVERIN, Chief Justice (dissenting).

I respectfully dissent from the majority opinion.

I cannot agree with division II and the result reached. The substantive evidence of defendant's actions toward the victim is insufficient to support a charge of assault with the intent to commit sexual abuse. The majority uses evidence of defendant's past bad acts to fill the admitted void in the evidence as to defendant's intent in the present case. Thus, defendant's conviction would be bottomed on defendant's past bad acts and not on evidence of his intent in the present case, even though the general rule is that " 'one crime cannot be proved by proof of another.' " *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979) (quoting *State v. Schlak*, 253 Iowa 113, 115, 111 N.W.2d 289, 291 (1961)).

In the present case, defendant at most merely grabbed S.O.'s arms. Defendant did not make any sexual comment to S.O. or touch her in a sexual manner. We have previously held that

> [an] overt act must reach far enough towards the accomplishment, toward the desired result, to amount to the commencement of the consummation, not merely preparatory.... [I]t must approach sufficiently near it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.

*State v. Roby*, 194 Iowa 1032, 1043, 188 N.W. 709, 714 (1922). Defendant's acts in the present case did not go far enough to indicate a plan to engage in sexual activity with S.O.

The evidentiary record clearly supports a charge of assault, but not the one of which defendant was convicted.

SCHULTZ and NEUMAN, JJ., join this dissent.