# IN THE COURT OF APPEALS OF IOWA

No. 3-1199 / 12-2000
Filed March 12, 2014

**LARRY DEAN BORING,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Jones County, Patrick R. Grady, Judge.

　　A criminal defendant appeals from denial of his application for postconviction relief.  **AFFIRMED.**

　　Philip Mears, Mears Law Office, Iowa City, for appellant.

　　Thomas J. Miller, Attorney General, Sheryl Soich, Assistant Attorney General and Phil Parsons, County Attorney, for appellee.

　　Considered by Vogel, P.J., and Mullins and McDonald, JJ.

**MULLINS, J.**

Larry Dean Boring appeals from denial of an application for postconviction relief. In 2005, Boring was convicted by trial to the bench of sexual abuse in the second degree and lascivious acts with a child. He raises three issues on appeal: 1) trial counsel was ineffective in failing to object to evidence of allegations of sexual abuse by another child; 2) trial counsel was ineffective in failing to object to testimony regarding the victim's truthfulness; and 3) the cumulative effect of trial counsel's deficient performance was prejudicial. The district court rejected each claim and denied postconviction relief. We affirm.

**I.      Background Facts and Circumstances.**

In summer 2004, Boring resided with his wife, Tracy, who is the mother of three children, B.S., S.S., and G.S. The children lived full-time with their father and stepmother, and had visitation in Tracy's and Boring's home on weekends. In October 2004, eleven-year-old S.S. reported to her stepmother that Boring had been touching her inappropriately during visitations. S.S. was interviewed by Child Protective Services. She also had a physical exam that revealed no evidence of sexual abuse. Ivan Eden, a Jones County Deputy Sheriff, and Larry Hedlund, a Division of Criminal Investigations agent, interviewed Boring.

In January 2005, the State charged Boring with sexual abuse in the second degree, sexual abuse in the third degree, lascivious acts with a child, and assault with intent to commit sexual abuse. The State later amended each count to include enhanced penalties for a prior "sexually predatory offense." Boring's case was tried to the bench on September 19 and 20, 2005.

At trial, S.S. testified that during the summer of 2004, Boring, Tracy, and the children regularly got into Boring and Tracy's bed and watched movies together in the evening. On one occasion, Tracy lay next to B.S. and G.S. sharing a blanket with them; S.S. lay next to Boring, sharing a blanket with him. S.S. testified that, while her mother and siblings were sleeping, Boring reached to the table at the side of the bed, applied "slippery stuff" to his fingers, and rubbed her vagina. When she told him it hurt and pushed her legs together, Boring grabbed her legs and pushed them apart. He told her, "Don't tell anybody." This conduct occurred repeatedly throughout the summer. On other occasions, Boring rubbed S.S.'s breasts and anus and placed her hand on his penis, which she testified was "firm." S.S. estimated Boring did one of more of these actions more than twenty times during the summer and fall of 2004.

Eden and Hedlund testified regarding their interview with Boring. They testified Boring denied having sexual contact with S.S., but repeatedly stated that if the contact had occurred, he did not remember it. Boring also repeatedly stated and admitted that S.S. was a truthful child and "not a liar." Boring described the bedroom setting of the assault similarly to S.S. with Tracy and Boring each having their own blanket and sharing with the three children.

Tracy testified on behalf of Boring. She stated S.S. had a friend, B.J., who had accused her stepfather, Joshua Woods, of sexually abusing her. Tracy believed Woods, not Boring, also molested S.S., and that S.S. was influenced or confused by B.J.'s experience. At the postconviction relief trial, Boring's trial counsel testified his strategy was to argue that although S.S. had been abused

by Woods, she mistakenly or in confusion accused Boring. Tracy also testified she had never seen Boring touch the other children inappropriately. However, on cross-examination, Tracy admitted that B.S. previously had accused Boring of "molesting" her.

The district court found Boring guilty of one count of second-degree sexual abuse and one count of lascivious acts with a child. The court found there was insufficient evidence to apply the enhancement to the charges. On direct appeal, Boring argued his trial counsel was ineffective and we preserved the claims to develop the record on postconviction relief. *State v. Boring*, No. 05-2054, 2007 WL 1063037, at *1 (Iowa App. Apr. 11, 2007). Boring filed an application for postconviction relief in November 2007 and amended the application in June 2008. Among his claims, Boring argued his trial counsel was ineffective in failing to object to the evidence of B.S.'s past accusations against him and the testimony regarding S.S.'s truthfulness. Following a hearing the postconviction court found that trial counsel failed to perform an essential duty in those respects, but Boring did not show prejudice resulted. Consequently, the postconviction court denied postconviction relief. Boring appeals and renews the same claims.

## II.     Standard of Review.

Generally, we review postconviction proceedings for correction of errors at law. *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011). However, when a postconviction applicant asserts a violation of constitutional safeguards, such as effective assistance of counsel, we make our evaluation based on the totality of

the circumstances.  *Ailes v. State*, 574 N.W.2d 353, 354 (Iowa Ct. App. 1997).
This is the equivalent of de novo review.  *Id.*

**III.    Analysis.**

To prevail on a claim of ineffective assistance of counsel, the applicant
must prove by a preponderance of the evidence (1) trial counsel failed to perform
an essential duty and (2) prejudice resulted.  *State v. Straw*, 709 N.W.2d 128,
133 (Iowa 2006).  Judicial scrutiny of counsel's performance is highly deferential.
*Strickland v. Washington*, 466 U.S. 668, 689 (1984).  To prove prejudice, the
applicant must show "a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different."
*Id.*  A reasonable probability is "a probability sufficient to undermine confidence in
the outcome."  *Id.*  The applicant's failure to prove either element is fatal;
therefore, we may resolve the claim on either prong.  *State v. Graves*, 668
N.W.2d 860, 869 (Iowa 2003).

**A.    Evidence of Accusations of Prior Bad Acts.**

Boring contends trial counsel was ineffective in failing to object to
evidence that B.S. had also accused Boring of touching her inappropriately.
While testifying for Boring, Tracy stated she had never seen Boring touch B.S. or
G.S. inappropriately.  On cross-examination Tracy admitted that B.S. had
accused Boring of touching her inappropriately on a prior occasion.  Trial counsel
did not object, and the postconviction court found this was a breach of an

essential duty.[1] However, it found Boring was not prejudiced because the State's evidence against him outweighed the flawed evidence that was allowed into the record.

Boring asserts evidence of accusations of similar crimes or bad acts is particularly harmful, citing three cases where convictions were overturned on appeal due to prejudice from such accusations: *State v. Castaneda*, 621 N.W.2d 425 (Iowa 2001); *State v. Adcock*, No. 01-1637, 2002 WL 31528139 (Iowa Ct. App. Nov. 15, 2002); and *State v. Gates*, No. 99-1158, 2001 WL 913826 (Iowa Ct. App. Aug.15, 2001). Each of these cases was tried to a jury. Boring further asserts, "The fact that the Boring case was tried to a judge does not need to be addressed in discussing prejudice." He cites *State v. Casady*, 491 N.W.2d 782 (Iowa 1992), for the proposition that whether the case was tried to a judge is one of several factors to consider in a prejudice determination. However, our supreme court in *Casady* also stated, "There is less danger of unfair prejudice resulting from the use of the evidence in this case because Casady was tried to the court. The prejudicial effect of other-crimes evidence is reduced in the context of a bench trial." *Casady*, 491 N.W.2d at 786. "Judges routinely are called upon to consider the admissibility of evidence that may be later excluded at trial." *State v. Decker*, 744 N.W.2d 346, 356 (Iowa 2008). "Judicial knowledge of evidence which is subsequently not admissible does not ordinarily undermine later judicial determinations in the case." *Id.*

---

[1] The postconviction court noted, "The trial was, more or less, an evidentiary free-for-all with each side allowing the other to delve into evidence not normally admissible. Whether this was a product of the case being a bench trial or a looser local legal culture is unknown."

In support of his contention that the statements regarding B.S. were prejudicial, Boring argues the evidence in the case was already weak for two reasons: there was no physical evidence of assault and S.S.'s testimony was implausible. Boring contends, if the assault occurred as S.S. described it, someone else in the bed would have noticed it occurring. The State responds the evidence was already strong and it is unlikely the trial court was swayed by references to B.S.'s past accusations.

We acknowledge there was no physical evidence of assault in the case, and the conviction rests heavily on the testimony of S.S.. The district court heard S.S.'s testimony and clearly found her account credible. We too find her testimony was detailed, specific, and credible. Therefore, the theory that S.S. was confused between or conflating an assault by Woods and an assault by Boring is unconvincing. In addition, in the interview with law enforcement officers Hedlund and Edin, Boring largely corroborated S.S.'s statements about the bedroom setting for the assaults. Further, although Boring denied the allegations, he repeatedly ("in excess of ten times") stated that if the conduct occurred, he did not remember it. In addition, the court was aware that the State enhanced the instant charges due to a previous conviction for a "sexually predatory offense." The court's knowledge of a prior similar conviction would create as great a risk of prejudice as B.S.'s accusations, if not greater. Because judges have advanced legal and judicial training that juries do not, there is less risk of prejudice. Here, the court's knowledge of B.S.'s accusations does not undermine confidence in the verdict because the evidence in the record supports

the finding of guilt without reference to the prior allegations.[2]  Boring failed to show a reasonable probability that but for trial counsel's failure to object the result would have been different.  Therefore, he was not prejudiced.

### B.      Evidence of Victim's Truthfulness.

Boring contends trial counsel was ineffective in failing to object to testimony regarding S.S.'s truthfulness in violation of *State v. Graves*, 668 N.W.2d 860 (Iowa 2003).  In *Graves* our supreme court ruled that a prosecutor may not ask a defendant to comment on the veracity of another witness.  668 N.W.2d at 882.  At trial Eden and Hedlund testified that during their interview, Boring repeatedly stated and admitted that S.S. was a truthful child and "not a liar."  The postconviction court found trial counsel's failure to object to this testimony was a violation of *Graves*, but Boring was unable to show he was prejudiced as a result.  *Graves* set out five factors the court considers, "within the context of the entire trial," when determining whether a *Graves* violation is prejudicial: 1) the severity and pervasiveness of the misconduct, 2) the significance of the misconduct to the central issues of the case, 3) the strength of the State's evidence, 4) the use of cautionary instructions or other curative measures, and 5) the extent to which the defense invited the misconduct.  *Id.* at 869.  Prejudice is present if the court determines "there is a reasonable probability the prosecutor's misconduct prejudiced, inflamed or misled the jurors

---

[2] We are hampered in our analysis, as was the postconviction court, by the trial court's verdict and judgment, which recites the elements of the crimes and does not make any specific fact or credibility findings.  Nor did the court make any findings in its oral recitation of the verdict.  Boring has never challenged the sufficiency of that ruling and the burden is on him in this postconviction action to prove ineffective assistance with the record that was made.

so as to prompt them to convict the defendant for reasons other than the evidence introduced at trial and the law as contained in the court's instructions."[3] *Id.*

Boring argues the misconduct was severe, repeated, and significant because the case turned on S.S.'s credibility due to the weakness of the State's evidence. Boring also argues the defense did not invite the misconduct because the State presented the offending evidence in its case in chief. He concedes the fourth factor, the use of cautionary instructions or curative measures, is inapplicable in a bench trial.

As stated above, we acknowledge that most of the evidence in the case comes from the victim's testimony. We also acknowledge that the inadmissible testimony was relevant to a determination of S.S.'s credibility. However, Boring adduces nothing that indicates the trial court relied upon the inadmissible evidence to draw its conclusions. The court also independently assessed S.S.'s testimony and obviously determined she was a credible witness. Boring's interview statements corroborated her memory of the setting for the assaults. Consequently, Boring fails to show a reasonable probability that the inadmissible evidence prejudiced, inflamed, or misled the court to convict Boring for reasons other than the evidence at trial and the correct application of law.

---

[3] We note that this standard references the jury, a further indication that prejudice is less likely in the context of a bench trial. The trial in *Graves* was to the jury and our supreme court noted that the right to have one's guilt or innocence determined solely on the basis of evidence introduced at trial was "threatened by any incident likely to prejudice the jury." *Graves*, 668 N.W.2d at 876-77. On our review, we determine whether there is a reasonable probability *the court* was prejudiced, inflamed, or misled.

**C.     Cumulative Prejudice.**

Finally, Boring contends the cumulative effect of the ineffective assistance was prejudicial.  The State responds that because his individual claims have no merit, the cumulative claim has none either.  We find that the trial court's mere knowledge of B.S.'s accusation and the testimony of S.S.'s truthfulness, taken together with all other evidence in the case, does not establish a reasonable probability that the outcome of the trial would have been different but for such knowledge.

**IV.     Conclusion.**

Boring failed to show he was prejudiced by admission of B.S.'s accusation and the testimony regarding S.S.'s truthfulness.  He also failed to show the cumulative effect of his trial counsel's ineffective assistance was prejudicial.  Consequently, his ineffective assistance of counsel claims fail.  We affirm the postconviction court's ruling.

**AFFIRMED.**