# IN THE COURT OF APPEALS OF IOWA

No. 23-1618
Filed December 4, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MATTHEW SCOTT SERRES,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Cheryl Traum, Judge.

A defendant appeals his conviction for eluding while going more than twenty-five miles per hour over the speed limit. **AFFIRMED.**

Kent A. Simmons, Bettendorf, for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney General, for appellee.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**TABOR, Chief Judge.**

After hearing evidence that Matthew Serres led police on a high-speed chase on his motorcycle, a jury found him guilty of eluding while going more than twenty-five miles per hour over the speed limit. Serres appeals, contending that the State failed to prove he was driving the motorcycle. Finding substantial evidence to support the identification of Serres as the eluding motorcyclist, we affirm.

## I.      Facts and Prior Proceedings

Working the midnight shift on July 11, 2022, State Trooper Marissa Mussmann saw three motorcyclists cross the Interstate 74 bridge from Illinois into Iowa.[1] None of the motorcycles had registration plates. After the motorcyclists left the interstate and ran a stoplight, Trooper Mussmann activated her patrol vehicle's lights and sirens. But only two of the three motorcyclists pulled over.[2] The third motorcyclist led the troopers on a chase through a residential neighborhood, a commercial area, a store parking lot, and eventually back onto the interstate.

Trooper Mussmann recalled that the eluding motorcyclist drove "through traffic signs, stop signs, stoplights without stopping" and hit speeds up to "eighty-two in a thirty mile an hour residential zone." Another state trooper and a Bettendorf police officer, Landry Blunk, joined the chase. The motorcyclist was going about one hundred miles per hour when Trooper Mussmann and Trooper

---

[1] Trooper Mussmann was in field training with Trooper Ian Cornwell. She was driving the patrol vehicle; he was in the front passenger seat.
[2] By the time another patrol unit arrived, the two motorcyclists who pulled over had left the scene. They were never identified.

Cornwell caught up with him on the interstate, pulling alongside the motorcycle to "get a good view of the driver."

Troopers Mussmann and Cornwell stopped pursuing the motorcyclist when he crossed back into Illinois. But Officer Blunk continued to follow him from a distance with his lights and sirens off. After the motorcyclist exited the interstate in Moline, Officer Blunk saw him "crash out" and fall off his motorcycle at an intersection. According to Blunk, the motorcyclist then "got back on the motorcycle and quickly sped off to the south of the intersection." Officer Blunk stayed at the intersection and collected debris from the crash, including a saddlebag lid that fell off the motorcycle.[3] As Officer Blunk was inspecting the crash scene, a bystander[4] approached and led him to an alley, where the officer noticed the light on in a garage and "what sounded like furniture" being moved inside. The officer then notified the Iowa State Patrol of that address.

Receiving that notice, Troopers Mussmann and Cornwell determined that Serres was listed as a registered driver at that same Moline address. Trooper Mussmann then asked dispatch for Serres's Illinois driver's license photo. From that photo, she confirmed that Serres was the eluding motorcyclist. After they arrived at Serres's address, the troopers and Officer Blunk identified a "Harley Davidson-type" cruiser inside the garage as the motorcycle from the chase. Trooper Mussmann approached the residence and spoke to Serres through the

---

[3] Officer Blunk explained why he didn't follow the motorcyclist when he left the crash scene: "I slowly approached the intersection and called out to other units that the bike had crashed. Being alone and not understanding the full circumstances of why the bike failed to stop, I didn't want to get out and engage directly with the suspect at that time."

[4] The bystander was not identified and did not testify.

front door. Serres confirmed that the garage was his and that he owned motorcycles inside.

The State charged Serres with eluding while going more than twenty-five miles per hour over the speed limit, in violation of Iowa Code section 321.279(2) (2022). He pleaded not guilty. The case went to jury trial in July 2023.

At trial, Trooper Mussmann testified that the eluding motorcyclist was a "white male" riding "a Harley type bike with saddlebags on either side." He was "wearing a black sweatshirt and a black ball cap." His cap flew off during the chase. Trooper Mussmann also testified that before she shut down her lights and sirens, she pulled parallel to the motorcycle to get a better view of the driver.[5] She went to Serres's residence "within an hour" after the chase. Although he didn't open the door all the way when she spoke to him, Trooper Mussmann testified that she could see Serres "a little bit" through "some gaps in the blinds." She noticed tattoos on his arms consistent with tattoos she saw on the motorcyclist.

During Trooper Mussmann's testimony, the prosecutor asked Serres to "present himself and roll up his sleeves slightly." Trooper Mussmann then identified him as the driver of the motorcycle. When defense counsel cross-examined her about the accuracy of her identification, Trooper Mussmann doubled down: "I observed a subject that looked exactly like Mr. Serres on that bike." And

---

[5] During her testimony, the jury viewed Trooper Mussmann's dash camera video of the chase, which showed the motorcyclist from behind as the troopers pulled up next to him. The troopers were driving alongside him for around twenty seconds. The motorcycle and the driver match Trooper Mussmann's general descriptions, but his face is not visible in the video.

she explained why she believed more investigation wasn't necessary to connect Serres to the chase:

> Because we had made a photo identification of the subject, he was seen in that area, the bike was observed with the lights on in the garage that Mr. Serres identified as his garage, and made contact with the subject at the front door who identified himself as Matthew Serres, and I observed the tattoos that were consistent with the subject that I saw on the motorcycle that I was pursuing.

Trooper Cornwell testified that during the chase, "I requested that Trooper Mussmann pull up next to . . . the driver of the motorcycle so I can see his face and identify him." Although they were going "quite fast" at that point, Trooper Cornwell was "able to get a good look" at the motorcyclist "because we were both traveling at those speeds, we weren't going opposite directions where it was just a flash of a second, it was a consistent time where we're both at those speeds." Trooper Cornwell also recalled that he called out a description of the motorcyclist over the patrol vehicle's radio as he was looking at him.[6]

During Trooper Cornwell's testimony, the prosecutor again asked Serres "to stand up and roll up his sleeves slightly." Trooper Cornwell then identified Serres as the driver of the motorcycle from that night. He testified that he recognized Serres based on "both his facial appearance and his tattoos." He elaborated that Serres's tattoo was distinctive because of "the dark coloring of it and just the specific shapes of it." And he explained that he could see the motorcyclist's tattoo during the chase "because while he was driving at those speeds, his long-sleeved shirt did go up in the wind."

---

[6] Trooper Cornwell's description of the motorcyclist is audible in the dash camera video that the jury viewed.

Trooper Cornwell also testified that he got "a good look" at the motorcycle during the chase. He described it as "a light blue, not a sport bike, but a cruiser or bigger type bike." He explained that he could identify the motorcycle in Serres's garage as the same motorcycle from the chase "because I was part of the chase, witnessing it in the passenger seat and seeing it, especially pulling up next to it, as that exact vehicle."

Beyond the troopers' testimony, Officer Blunk told the jury that he was "able to get a good look at the motorcycle" during the chase. He described it as "a cruiser style motorcycle" with "saddlebags on the back." He elaborated that it was "kind of like a Harley Davidson, a bigger style bike . . . . It was a darker color, I believe. I think it was blue." And he described the driver as "a male who was white. He had facial hair and he had glasses on as well." Moreover, Officer Blunk testified that when he approached Serres's garage, he saw a motorcycle "similar to the bike that fled" through a "little peephole" in the garage door.[7] He explained that the motorcycle in the garage "had damage consistent with the bike crashing out, and also one of the saddlebags that matched the color scheme of the saddlebag lid that I had found was missing from the bike."

To counter the State's case, the defense called Serres's wife, Amber, as an alibi witness. Amber testified that she was at home with Serres on Sunday night, July 10, into the early morning hours of July 11. Around 12:30 a.m., they went upstairs and had sex, according to her testimony. She estimated they were

---

[7] The jury viewed Officer Blunk's body camera video from when he approached the garage with Trooper Cornwell. The "peephole" in the door is visible at the end of the video, but the inside of the garage is not visible in the video.

upstairs for "an hour, hour and a half or so." Afterward, Serres stayed upstairs; Amber went downstairs and "fell asleep on the couch." She explained that "usually after we have sex [Serres] falls right to sleep" and that she has "a little Maltese, that if anything moves in my house at all, he barks." She believed that if Serres had gotten up and left in the night, her Maltese would have barked and woken her up. But the next thing she remembered was "getting woke up with pounding on my front door" when the police arrived.

Amber recalled that when the police asked to speak to Serres, "I called up the stairs for him and he didn't answer, and I called him, like, twice and he still didn't answer, so I went upstairs and he was in bed." Serres then came downstairs wearing only his boxer shorts and spoke to the police; "he opened the door and kind of like just had, like, his head out, like they could see his face." Amber noted that Serres did not have any visible injuries.

Amber also testified that she did not believe the eluding motorcyclist in Trooper Mussmann's dash camera video was Serres:

> My first impression was that was not my husband because that guy, whoever is on the bike, his shoulders are, like, broad and went down, and my husband is nothing . . . he's real skinny and just, like, his shoulders aren't broad . . . .
>
>      . . . .
>      Yeah, that was my first response. I'm like no, that's not him just because of his shoulders.

Additionally, Amber described the hole in the garage door that the officers saw the motorcycle through as "a nail hole" smaller than "a tip of a pencil" that "you could see a light bit of light through." And according to Amber, the motorcycle in the garage that night was a white motorcycle that belonged to Serres's friend.

The jury found Serres guilty as charged. The district court sentenced him to 240 days in jail with all but seven days suspended, imposed a fine of $855, and placed him on probation. Serres appeals.

## II. Scope and Standard of Review

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). We are bound by the jury's verdict if it is supported by substantial evidence. *State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024). Substantial evidence exists if the record "would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022) (citation omitted). "Evidence which merely raises suspicion, speculation, or conjecture is insufficient." *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992). "We consider all evidence, not just the evidence supporting the conviction, and view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (citation omitted).

## III. Analysis

Serres argues that the State failed to prove beyond a reasonable doubt that he was the eluding motorcyclist. He questions the reliability of the testimony from the officers who identified him based on his tattoos and facial features. Serres also points out gaps in the State's evidence connecting him to the chase. For example, Officer Blunk didn't follow the motorcyclist after he "crashed out"; the civilian who led Blunk to the alley wasn't identified; no witness saw the motorcyclist stop at Serres's address; and Amber gave him an alibi.

Starting with the tattoos. The defense claims that Trooper Cornwell's testimony about the motorcyclist's tattoos "is actually dispositive exculpatory evidence that fully clears Matt Serres as a suspect." In support of this claim, Serres highlights an exchange during cross-examination when Trooper Cornwell acknowledged that when he called out the description of the motorcyclist during the chase, he described "an anarchy type tattoo" on "his left hand." Serres's counsel then asked Serres to stand up, and Trooper Cornwell could not see "an anarchy type tattoo" on Serres's hand in the courtroom.

As for the reliability of the facial recognition, Serres emphasizes that "[w]hen the squad car pulled up even with the bike on I-74, there is no video of what the troopers were seeing as they looked at the driver." He suggests that, contrary to their testimony, the troopers couldn't have gotten a "good look" at the motorcyclist during the chase because they "only saw a profile of the driver, at a high rate of speed," and "[t]he profile was observed in the dark of night." Serres also emphasizes Amber's testimony that she didn't believe the motorcyclist in Trooper Mussmann's dash camera video was her husband.

On top of that, Serres questions the reliability of the officers' identification of the motorcycle in his garage as the one involved in the chase. He points out that Amber "testified the hole in the garage door was even smaller than the 'tiny hole' Officer Blunk described in his testimony." He also points out that the officers did not get a search warrant for the garage or take any photos of the motorcycle they saw inside. Moreover, the saddlebag Officer Blunk collected from the crash scene was not photographed or introduced into evidence. And the witnesses gave varying descriptions of the motorcycle's color.

In considering Serres's challenge to the sufficiency of the evidence, our "review of the jury's verdict is not the trial redux." *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022). It is not our place "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *Id.* (citation omitted). "It is also for the jury to decide which evidence to accept or reject." *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). And although we "consider all evidence, not just the evidence supporting the conviction," we must "view the evidence in the light most favorable to the State." *Ernst*, 954 N.W.2d at 54.

Viewing all the evidence in this light, a rational jury could find beyond a reasonable doubt that Serres was the eluding motorcyclist. *See State v. Brown*, 5 N.W.3d 611, 616 (Iowa 2024) (finding sufficient evidence to support jury's determination that defendant was eluding driver where police officer saw driver's face during pursuit, officer identified defendant in court, and evidence connected defendant to vehicle). Both Trooper Mussmann and Trooper Cornwell testified that Serres was the motorcyclist they chased; they identified him based on his facial features and tattoos, which they saw as they drove parallel to him on the interstate. Serres was free to question the reliability of their identification at trial, but the jury was also free to credit their testimony. And although Trooper Cornwell couldn't point out an anarchy tattoo on Serres's hand during cross-examination, the jury was free to accept his explanation on redirect that when he was describing the motorcyclist's tattoos during the chase, he wasn't "necessarily referring to a specific image or tattoo" but was instead "referring to a broad category" of tattoos.

The jury was also free to credit Trooper Cornwell's testimony that the motorcycle he saw in Serres's garage was the one he and Trooper Mussmann chased that night. Same for Officer Blunk's testimony that the motorcycle in Serres's garage had damage consistent with the debris he found at the intersection where the motorcyclist crashed. And it was up to the jury to determine whether to credit Amber's alibi; we cannot make these determinations for ourselves on appellate review.[8] *See Mathis*, 971 N.W.2d at 519. Finally, the jurors viewed Trooper Mussmann's dash camera video of the chase and Officer Blunk's body camera video showing the alley and Serres's garage door. Based on the video evidence, the jurors could decide for themselves whether Serres looked like the eluding motorcyclist and whether Officer Blunk and the troopers could have seen into the garage well enough to identify the motorcycle.

In sum, the State did not rely on evidence that created mere speculation, suspicion, or conjecture. Instead, it presented substantial eyewitness and video evidence to support the jury's determination that Serres was the eluding motorcyclist. Thus, we affirm Serres's conviction.

**AFFIRMED.**

---

[8] In his reply brief, Serres concedes that Amber's alibi testimony was "far from airtight." He then claims that because the State did not introduce evidence contradicting specific details of her testimony, we must give weight to these "undisputed facts" in our review. But that kind of weighing is for the jurors.