# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-0906
Filed February 11, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Trevor Allen Jeorge Ward,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Clinton County,
The Honorable Joel W. Barrows, Judge.

———————————

**AFFIRMED**

———————————

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, Anagha Dixit (until withdrawal)
and Adam Kenworthy, Assistant Attorneys General, attorneys for appellee.

———————————

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

A jury convicted Trevor Ward of first-degree arson and first-degree murder in the death of Dusty Doran. On appeal, Ward raises a single issue: did the State offer proof beyond a reasonable doubt that he was the person who committed those crimes? Because the State offered ample evidence to prove his identity as the perpetrator, we affirm Ward's convictions.

## I.    Facts and Prior Proceedings

Ward and Doran met at King House, an inpatient substance-use rehabilitation center in Clinton. Doran finished treatment first, found a job, and settled into his own place in February 2022. About a month later, when Ward needed somewhere to stay after leaving King House, Doran welcomed him to Apartment N in the Penn Building.

From that apartment, close to midnight on March 25, the next-door neighbor overheard two voices arguing. Then, in the early morning hours of March 26, that same neighbor awoke to "a bad physical fight going on" in Doran's apartment. As she considered whether to call 911, the noise stopped. She had just fallen back asleep when a neighbor from across the hall pounded on her door, warning that there was a fire in the building. Indeed, her fire alarm was triggered, and she could see and smell smoke.

The neighbor pounding on doors was eighteen-year-old Cade, who had called 911. He told the operator that he smelled burning rubber and opened his apartment door to see the hall filled with thick white smoke. In his words, "The whole fucking apartment building is smoked out." Along with his father and stepmother, Cade alerted other apartment dwellers to the danger. When they headed outside, they saw a red backpack in a hallway near the building's exit. Cade's stepmother picked the backpack up, but Cade quickly

warned his stepmother not to touch it because he thought it might be evidence of a crime.

When firefighters arrived at the Penn Building, they found the door of Apartment N ajar. Through the open door, they saw "the glow of the fire burning on the floor." After they extinguished the fire, they saw the victim, Doran, kneeling on the floor with his face against the couch cushions. They noticed Doran was "right by the fire." Firefighter Alexander Sellnau testified it was obvious that Doran was dead. "And there was quite a bit of blood around his face from apparent head injury." After the firefighters' gruesome discovery, Clinton police officer Kristopher Blount checked the apartment. He noted fire damage concentrated around the couch and Doran's body.

Officer Blount also testified that Cade remained at the scene to cooperate with investigators.[1] Officers at the scene seized the red backpack from the hallway. The name "Dusty" was written in black marker on top of the backpack. But everything they found inside belonged to Ward. Those belongings included prescription bottles and credit cards, as well as a set of headphones.

The medical examiner later determined that Doran's cause of death was multiple sharp force injuries. Beyond the burns to his body, the victim suffered more than thirty stab wounds. And the couch was not the only place where crime scene investigators found Doran's blood. From the bathroom, investigators collected a shower curtain stained red on both sides. Lab testing confirmed the blood matched Doran's DNA. In the bathtub, investigators found a cigarette butt bearing the DNA of both Doran and Ward.

---

[1] When police asked if his father was at home, Cade lied and said no. In reality, Cade's father had been there but bolted because he had outstanding warrants for his arrest.

Meanwhile, the same morning that they discovered Doran's body, police had three interactions with Ward unrelated to the fire investigation. Around 9:30 a.m., Officer Stephen Thayer stopped Ward because he matched the description from a complaint called into dispatch. During that encounter, captured on Officer Thayer's bodycam, Ward was agitated and told them that his father was "one of the highest people up in the CIA." The officers patted Ward down, finding a folding pocketknife. Officer Thayer also noticed Ward had injuries on his hands. After a short conversation, Ward walked away, saying he was headed to the bus stop.

The second encounter—about ninety minutes later—constituted a welfare check on Ward, who was sitting against the side of a building. Again captured on his body cam, Officer Thayer asked if Ward was "doing okay?" Ward said he was, and asked the officers as they walked away: "Why are you guys harassing me?"

The third encounter was just before noon. Officers received a call that Ward had assaulted a man named George. Ward appeared intoxicated and acted erratically. The officers arrested Ward for assault, not realizing he had a connection to Doran's murder. When they were transporting him in the back of the patrol car, unprompted, Ward said: "They had killed my best friend, bro. I left after the haunting, and I fixed it. They killed my friend."

Officers linked Ward with the unfolding murder investigation only after arriving at the jail. The wallet that police seized from Ward had Doran's credit cards and identification inside, and later lab analysis showed Doran's blood on the wallet. Arresting officer Ryan Livesay noticed that the ball cap seized from Ward smelled like smoke. That hat—emblazoned with the word VICE—belonged to Doran. Ward was also wearing a pair of red and white

Nike Jordan sneakers, which witnesses identified as a prized possession of the victim.

With these details in mind, we look back to one week before the fire. Ward told a friend that he and Doran were not getting along. Then, two days before his death, Doran confided in a department of corrections monitor that he had relapsed and was disappointed in himself. Doran told the monitor that to "put his sobriety first," he might ask Ward to move out because he was a bad influence.

The day before the fire, Ward abruptly left his welding job. After that, he shopped at Walmart and Walgreens, leaving receipts for those purchases in Doran's apartment. One of those purchases was the set of headphones later found in the backpack outside the burning apartment. Then, in the early morning hours of March 26, Ward was captured on camera in a convenience store wearing white and black tennis shoes and without any injuries on his hands.

Based on the circumstances both before and after the crimes, the State charged Ward with first-degree murder and first-degree arson. After a five-day trial, the jury convicted Ward on both counts. He appeals.

## II.    Scope and Standard of Review

Our review is for the correction of legal error. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We take the evidence in the light most favorable to the verdicts and decide whether the State offered substantial evidence to support the jury's finding of guilt. *Id.* Evidence is substantial if it could persuade a reasonable jury that the accused is guilty beyond a reasonable doubt. *Id.* "We draw all fair and reasonable inferences that may be deduced from the evidence in the record." *State v. Meyers*, 799 N.W.2d 132,

138 (Iowa 2011). Evidence that rises only to suspicion, speculation, or conjecture is not enough. *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992).

### III. Analysis

To convict Ward of first-degree murder, the State had to prove:

1. On or about March 26, 2022, [Ward] stabbed Dustin Doran.

2. Dustin Doran died as a result of being stabbed.

3. [Ward] acted with malice aforethought.

4. [Ward] [] acted willfully, deliberately, and premeditatedly and with a specific intent to kill Dustin Doran, [] or was participating in the offense of robbery . . . .

And to convict Ward of first-degree arson, the State had to prove:

1. On or about the 26th day of March, 2022, [Ward] caused a fire in or near property.

2. [Ward] intended to destroy or damage property or knew the property would be destroyed or damaged.

3. The presence of a person in the property could have been reasonably anticipated.

Ward challenges the proof of his identity for both offenses. "Identity is an element of a criminal offense which the State must prove beyond a reasonable doubt." *State v. Jensen*, 216 N.W.2d 369, 374 (Iowa 1974). Ward contends first that because he was living with Doran, evidence that his belongings were in a backpack at the scene was not proof of his guilt.[2] Second, he contends investigators found no DNA linking him to the crimes. Third, Ward asserts that he was delusional when arrested, so any statements he

---

[2] Ward also notes that he was wearing the red backpack in the videos of him entering Walgreens.

made to police "should not be given any credence." Fourth, Ward argues that "[l]aw enforcement too quickly concluded Cade was not the perpetrator." Ward details Cade's criminal history. And finally, Ward points out that Doran's next-door neighbor could not identify the voices she overheard fighting from Doran's apartment.

But Ward's appellate arguments are more fit for jurors, who are charged with judging witness credibility and deciding the weight to give certain evidence.[3] *See State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984) ("[T]he jury is at liberty to believe or disbelieve the testimony of witnesses as it chooses and give such weight to the evidence as in its judgment the evidence was entitled to receive."(internal citations omitted)). In reviewing sufficiency challenges, it is not our role "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence." *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (citation omitted).

Viewing the record in the light most favorable to the State, substantial evidence supports the jury's finding that Ward stabbed Doran and set his apartment on fire. The State's proof went well beyond speculation, suspicion, or conjecture. *Casady*, 491 N.W.2d at 787. In making its case, the State presented strong circumstantial evidence that Ward committed these offenses. *See Blair*, 347 N.W.2d at 421 ("[D]irect and circumstantial evidence are equally probative."). He had motive: the living arrangement with Doran was not working out. He had opportunity: he was at the apartment in the

---

[3] As the prosecutor explained in closing arguments, it was up to the jurors to determine the identity of the murderer: "So who killed Dustin Doran? You know this information because you're going to use your common sense and you're going to connect the dots."

hours before the fire. And the same morning that firefighters discovered Doran's body, police arrested Ward wearing Doran's sneakers and VICE cap, which smelled of smoke. Ward was carrying Doran's wallet, which had Doran's blood on it. Ward also had fresh injuries to his hands. And the red backpack containing Ward's valuables was left in the hallway, out of the range of the flames. The jury could rely on that conglomeration of evidence to find Ward was the killer.

As for Ward's forensic evidence argument, investigators did find a cigarette butt in the bathtub, where it appeared Doran was stabbed, bearing Ward's DNA. Turning to Ward's assertion that he was delusional when arrested, the State counters this by pointing out that he did not raise a defense of diminished responsibility nor did he move to exclude his statements to police. On this record, we agree that the jury could give Ward's voluntary statements to police whatever weight they deserved. Finally, we find little support for Ward's contention that police should have looked harder at Cade as an alternative suspect. Other than lying about his father's whereabouts, Cade complied with police requests to give a statement, to test his hands and clothes, and to check his phone. As the prosecutor argued in closing, if Cade "was somehow involved in this in some way, he deserves an award for the acting performance" on the 911 call.

The State's evidence allowed a rational jury to conclude beyond a reasonable doubt that he stabbed his roommate and started a blaze to cover his tracks. Thus, we affirm on both counts.

**AFFIRMED.**