# IN THE COURT OF APPEALS OF IOWA

No. 23-0019
Filed August 7, 2024

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**CLINTON R. VANFOSSEN,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Meghan K. Corbin, Judge.

Clinton Vanfossen appeals his convictions for electronic or mechanical eavesdropping, preventing apprehension or obstruct prosecution, and five counts of invasion of privacy–nudity. **CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING.**

Kent A. Simmons, Bettendorf, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Tabor and Greer, JJ., but decided by Tabor, P.J., Greer, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BOWER, Senior Judge.**

Clinton Vanfossen was convicted of electronic or mechanical eavesdropping, preventing apprehension or obstructing prosecution, and five counts of invasion of privacy–nudity after hidden cameras were found in and near his daughter's bedroom. Vanfossen appeals, challenging the sufficiency of the evidence supporting his convictions and the district court's denial of his motion in limine, claiming the admitted evidence led the court to incorrectly apply a transfer-of-intent rule on his invasion-of-privacy charges. Upon review, we find these claims to be without merit and we affirm Vanfossen's convictions. However, because the court did not provide specific reasoning for imposing consecutive sentences as opposed to concurrent sentences, we vacate the sentencing order and remand to the district court for resentencing.

## I.    *Background Facts and Proceedings*

In early 2020, Bettendorf police received a "cybertip" from the National Center for Missing and Exploited Children alleging "a teenage female was being filmed, at time in a state of nudity, likely without the knowledge of the video/recording device being present." The internet provider's account information associated with the camera system led police to Vanfossen's residence. Vanfossen's wife allowed police to search the home, and officers discovered two cameras hardwired to the ceiling disguised as smoke detectors.[1] One of the cameras was outside of the bedroom of Vanfossen's college-aged daughter, A.V. The other camera was on A.V.'s bedroom ceiling. Police also discovered notes

---

[1] Two actual smoke detectors were found inside a storage bin in Vanfossen's basement.

Vanfossen had written to A.V., detailing his interactions with her and expressing his love for her.

Vanfossen denied knowledge of the cameras.[2]  He agreed to come to the police station after work the next day, but he didn't show up and instead went home.  Officers met him there with a search warrant.  The only phone Vanfossen had with him was one he had purchased that morning before work.  Police eventually found deleted nude images of A.V. from 2017, which had been recorded on a different type of camera Vanfossen had placed in her bathroom.  Police also found nude and partially nude film and images of a young couple, J.B. and T.B., who stayed in A.V.'s bedroom while visiting during the 2019 holiday season.

The State filed a trial information charging Vanfossen with five counts of invasion of privacy, in violation of Iowa Code section 709.21(3) (2020); one count of electronic or mechanical eavesdropping, in violation of section 727.8; and one count of preventing apprehension or obstruction of prosecution, in violation of section 719.3(1).  The State did not name A.V. as a victim in any of the charges.  As to why A.V. was not also a named victim, the State explained:

> When this all came out and we believed that the defendant was actually having a sexual relationship with his daughter, or had actually raped her like the person saw on the camera, we honestly just didn't want to make it that traumatic for her.  There clearly was some religious control from what our investigation revealed, and we had two other adults that were willing to come in and testify who were actually recorded, and we were trying not to further traumatize his daughter to be quite honest.

---

[2] Police found receipts showing Vanfossen had ordered two motion-activated cameras several years earlier.

Vanfossen pleaded not guilty and waived his right to a jury trial. Vanfossen testified in his defense during the three-day bench trial, stating he had never been sexually attracted to A.V. and he installed cameras as a protective measure, because he was concerned about A.V. "leaving the [Christian] faith" to "bring a boy home from school" or pursue "different avenues, whether it's sex, drugs or whatever." Vanfossen testified any feelings he had for his daughter were fatherly and protective, in line with his Christian faith, and he installed the cameras to make sure A.V. did not have boys visiting the house, while the prosecution claimed he had a sexual attraction toward her and installed the cameras to watch her for a sexual intent.

Following trial, the district court entered a written ruling finding Vanfossen guilty as charged. The court imposed a total sentence of imprisonment not to exceed six years. Vanfossen appeals. Additional facts will be set forth below as relevant to his claims on appeal.

## II.    *Motion in Limine*

Prior to trial, Vanfossen filed a motion in limine seeking exclusion of evidence "show[ing] that Defendant is sexually attracted to his daughter, and that the cameras were planted for a devious reason with regard to the daughter," because "[t]his evidence is irrelevant, as his daughter is not the subject of any of the alleged recordings at issue with regard to the Trial Information." This claim implicates the evidence relating to the five counts of invasion of privacy, which alleged Vanfossen filmed J.B. or T.B. on separate occasions during their visit to Vanfossen's home from December 2020 to January 2021. Specifically, Vanfossen challenged the admission of evidence showing he "was trying to film [A.V.] for his

sexual purposes," including a "love letter" Vanfossen wrote to A.V. and journal entries Vanfossen wrote about A.V.

According to Vanfossen, "no law whatsoever" supports a "transferred intent" theory as a basis for admission of the evidence.  In other words, Vanfossen claimed:

> Any allegation of an improper sexual desire between Defendant and his daughter will be hugely prejudicial and hugely irrelevant.  The daughter is not the subject of any of the recordings at issue, and **none of the allegations in the Trial Information concern the daughter at all.**  Therefore, whether Defendant is sexually attracted to his daughter has no bearing on this case.

The State resisted the motion, claiming "[the] evidence is certainly relevant to the issue at hand and is more probative than prejudicial when it comes to proving the element that the recording was done for the purpose of arousing or gratifying the sexual desire of the defendant."

At hearing on the motion, the parties addressed the statute at issue, section 709.21, which sets forth the crime of invasion of privacy–nudity as follows:

> 1. *A person who knowingly views, photographs, or films another person, for the purpose of arousing or gratifying the sexual desire of any person, commits invasion of privacy* if all of the following apply:
> a. The other person does not consent or is unable to consent to being viewed, photographed, or filmed.
> b. The other person is in a state of full or partial nudity.
> c. The other person has a reasonable expectation of privacy while in a state of full or partial nudity.

(Emphasis added.)  Defense counsel argued, "So I think the case [involves] a specific intent crime.  It's prohibiting an action when that action is taken with a specific—for a specific purpose."  Defense counsel continued:

> The real issue here is that the allegation is that the defendant filmed these two specific people, [J.B. and T.B.,] and it's my analysis that

the allegation, therefore, must also be that he was trying—he was filming these two people intentionally in order to satisfy his sexual desires with regard to that filming.

. . . .

So not only is [the evidence relating to A.V.] not really relevant because the statute doesn't say you place a camera for one person but it captures another. The statute says if you film another person for the purpose of your own sexual gratification, and those other elements are met, that's a crime. What the State is trying to say is that the defendant attempted to film the defendant's daughter for the defendant's sexual gratification, but in actuality, filmed another person.

. . . .

So we are asking the Court to, basically, find in this matter that the allegation must be that he filmed the people that he is accused of filming with—for the purpose of arousing a sexual gratification.

The State countered:

Here, it's about the act of placing a recording device at a time, and at the time of doing that, what is that person's purpose? Is it for sexual gratification? The fact that you, ultimately, inadvertently record two other people that you might not have intended to in the beginning, I don't think absolves the criminal defendant of their guilt under this statute.

. . . .

This crime does not require it to be a specifically named person. That's why they say "another person." That's why they say, "the sexual desire of any person," because, ultimately, it's not about who you end up recording. It's that, when he placed that camera there, he had the intent to record, yes, his daughter, and the purpose of him doing that was for his sexual desire. The fact that he, ultimately, recorded the two other people staying over the Christmas holiday doesn't und[o] his criminal intent because his act of placing that camera at that time was for his sexual gratification.

And so, the State doesn't intend, certainly, to get into the fact that there may have been a sex act between the defendant and his daughter. We are not calling the tipster from France to come in and testify about what he saw because, certainly, there are certain things that corroborate what he saw, but that's—We are not trying to make it a sideshow, but the State is required to prove what a defendant's intent is when they—or what their purpose is for placing that recordings device, to record somebody who is going to be in a state of nudity, and that letter and the journals about his daughter do so. The State would not necessarily include the entire letter or the entire journal, but we would definitely ask the Court to excise portions of that that wouldn't be overly prejudicial; that are more probative than

prejudicial to this issue of what the defendant's purpose was for installing that camera device in his daughter's bedroom, and I think the letter and the journal entries in certain portions absolutely highlight what his purpose for doing so was, and we would ask the Court to allow that in.

Ultimately, the district court denied Vanfossen's motion in limine and admitted the evidence. Vanfossen appeals the court's ruling. We review the district court's evidentiary rulings for abuse of discretion. *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022). "A district court abuses its discretion when it bases its decisions on grounds or reasons clearly untenable or to an extent that is clearly unreasonable . . . [or] if it bases its conclusions on an erroneous application of the law." *Id.* (quoting *Stender v. Blessum*, 897 N.W.2d 491, 501 (Iowa 2017)) (alterations in original).

Section 709.21 requires the State to prove an accused viewed another person "for the purpose of arousing or gratifying the sexual desire of any person." Iowa Code § 709.21(1). "Intent is a matter that is seldom capable of direct proof. Consequently, we have recognized that a trier of fact may infer intent from the normal consequences of one's actions." *State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003). "[A defendant] will generally not admit later to having the intention which the crime requires . . . his thoughts must be gathered from his words (if any) and actions in light of surrounding circumstances." *State v. Radeke*, 444 N.W.2d 476, 478–79 (Iowa 1989) (quoting W. La Fave & A. Scott, *Handbook on Criminal Law* § 3.5(f), at 226 (2d ed. 1986)) (alterations in original). Therefore, we permit the fact finder to infer the requisite intent that a person acted with the purpose to arouse or gratify the person's sexual desires from the person's "conduct, remarks, and all surrounding circumstances." *State v. Jorgensen*, 758 N.W.2d 830, 837

(Iowa 2008); *see also State v. Johnson*, No. 15-0623, 2016 WL 3002866, at *2 (Iowa Ct. App. May 25, 2016) (finding sufficient evidence to infer the defendant had the requisite sexual intent based on surrounding circumstances); *State v. McAfee*, No. 13-0268, 2014 WL 1494901, at *2 (Iowa Ct. App. Apr. 16, 2014) (finding sufficient evidence to infer the defendant filmed the victim "to arouse or gratify [his] sexual desires"); *State v. Kuhn*, No. 19-1895, 2021 WL 1017128, at *5 (Iowa Ct. App. Mar. 17, 2021) (finding "[b]ased on [the defendant]'s conduct, his remarks, and the surrounding circumstances, there is ample evidence to support the jury's conclusion [the defendant] acted to arouse or satisfy his sexual desires in recording the three girls").

Vanfossen first asserts the State incorrectly transferred his alleged sexual attraction to his daughter to the named victims to meet its burden. He relies upon the characterization of indecent exposure as a "visual assault" crime that requires the perpetrator to take an assaultive action for the purpose of sexual arousal. *See Jorgensen*, 758 N.W.2d at 835. The State counters, arguing "[a]lthough [Vanfossen] contended his motive was innocuous and not sexual, the factfinder was entitled to hear and weigh the evidence in determining whether he installed the camera to view another person for a sexual purpose." The State further maintains Vanfossen's "sexual, voyeuristic interest in his daughter made it more probable that his filming of another person was sexually motivated." The State further claims if the legislature had intended to protect only specifically targeted victims, it would have written the statute differently. Section 709.21 does not require a specific victim like the stalking statute; instead, it refers only to "another person."

Iowa courts have not previously determined the issue of whether a transfer of intent theory is appropriate in an invasion-of-privacy case. The district court relied on *Jorgensen* to conclude a specific victim need not be targeted in an invasion of privacy case under section 709.9(1). *See id.* at 833. The *Jorgensen* court analyzed the indecent exposure statute and concluded even if the defendant was exposing himself to victims of whom he was unaware, he nonetheless violated the statute. *Id.* at 838. Vanfossen attempts to distinguish the present case from *Jorgensen* by claiming "an intent to physically or visually assault someone should [not] be treated in the same way as the non-assaultive act of surreptitious surveillance by transferring specific purpose or intent from one person to another."

Vanfossen also parallels *State v. Monahan*, where the court provides a list of surrounding circumstances that would have sufficiently proven the accused acted with a sexual purpose, to the present issue. *See* No. 17-0372, 2018 WL 2085061, at *7 (Iowa Ct. App. May 2, 2018) ("[T]here is no evidence he viewed them over a length of time. Monahan did not make any remarks to the teenage witnesses. The surrounding circumstances, the use of urinals in a public restroom at a track meet where people were walking in and out, does not give rise to an inference of sexual arousal and gratification. Nor is there any other evidence to show he was interested in viewing the genitals of teenage boys."). Vanfossen claims the lack of evidence in *Monahan* supports his motion in limine to protect A.V. from testifying about her father's alleged sexual attraction to her.

Nevertheless, we find the district court properly applied the statute at issue. Section 709.21 does not require the accused to film the specific sexually targeted person. Whether Vanfossen's sexual attraction toward his daughter motivated him

to install the cameras in and outside of her bedroom is relevant for the State to meet its burden of proof regardless of whomever the cameras captured. Because "intent is a matter that is seldom capable of direct proof," *Evans*, 672 N.W.2d at 331, it follows the district court properly admitted the "love letter" and journal entries as circumstantial evidence the State could use to meet its burden of proof.

Vanfossen further claims the court's ruling violated rule 5.403 "because all of the evidence concerning an alleged sexual attraction to [A.V.] was irrelevant to the Invasion charges and unfairly prejudicial as a glaring reflection upon [Vanfossen's] character." Relevant evidence is generally admissible unless its prejudice outweighs its probative value. *See* Iowa Rs. Evid. 5.402, 5.403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); *State v. Whittle*, No. 23-0776, 2024 WL 1757375, at *3 (Iowa Ct. App. Apr. 24, 2024); *see also State v. Lacey*, 968 N.W.2d 792, 807 (Iowa 2021) ("Whether evidence should be excluded under rule 5.403 is a two-part test: 'First, we consider the probative value of the evidence. Second, we balance the probative value against the danger of its prejudicial or wrongful effect upon the triers of fact.'" (citation omitted)). "'Iowa has adopted a broad view of relevancy,' and it 'is a legal question lying within the broad discretion of the trial court.'" *State v. Canady*, 4 N.W.3d 661, 669 (Iowa 2024) (quoting *State v. Thompson*, 954 N.W.2d 402, 407 (Iowa 2021)). Additionally, bench trials present a lesser opportunity for prejudicial impact. *See State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004) ("[T]he likelihood of an improper use of the evidence is reduced

by the fact that the . . . case was tried to the court."); *State v. Casady*, 491 N.W.2d 782, 786 (Iowa 1992) ("The prejudicial effect of other-crimes evidence is reduced in the context of a bench trial.").

We find the district court appropriately used its discretion in determining the "love letter" and journal entries' probative value outweighed their prejudicial impact.[3]  As the court found:

> Evidence as to why the Defendant placed the cameras where he did is directly relevant to the State's burden of proof.  Specifically, evidence of Defendant['s] motive regarding placement of the cameras, even if it is not directly tied to the victims named in the trial information is not only relevant but its probative value outweighs its prejudicial value.

The State requested only specific excerpts from both materials to be admitted at trial.  The State did not introduce more evidence than necessary to meet its burden of proof.  Moreover, the relevancy of the evidence outweighs its negative impact on Vanfossen's character.  Therefore, the district court correctly balanced the probative value against the prejudicial impact.

We find no abuse of discretion by the district court's admission of evidence relating to Vanfossen's sexual attraction to A.V.

---

[3] Even if the evidence was deemed prejudicial, it would be a harmless error. "Overwhelming evidence of guilt in the absence of wrongfully admitted evidence makes the admission of that evidence harmless error."  *Whittle*, 2024 WL 1757375, at *4.  Vanfossen's denial of the cameras, intentional placing of the cameras in and outside A.V.'s bedroom, and not removing the cameras when extended family came to visit supports the notion, he violated section 709.21.

### III.    *Sufficiency of the Evidence*

Vanfossen challenges the sufficiency of the evidence supporting his convictions.  The district court set forth the elements of proof for invasion of privacy in counts I, II, III, and IV in this case as follows:

> That said Clinton R. Vanfossen on or about the 27th [28th, 29th, 30th, and 31st] day[s] of December, 2019, in the County of Scott, and the State of Iowa did: knowingly view, photograph or film J.B. without her knowledge or consent and while the person has a reasonable expectation of privacy while in a state of partial or full nudity, for the purpose of arousing or satisfying the sexual desire of any person in violation of section 709.21(3) of the Code of Iowa.

The district court set forth the elements of proof for invasion of privacy in count V in this case as follows:

> That said Clinton R. Vanfossen on or about the 3rd day of January, 2020, in the County of Scott, and the State of Iowa did: knowingly view, photograph or film T.B. without his knowledge or consent and while the person has a reasonable expectation of privacy while in a state of partial or full nudity, for the purpose of arousing or satisfying the sexual desire of any person in violation of section 709.21(3) of the Code of Iowa.

The district court set forth the elements of proof for electronic or mechanical eavesdropping in count VI in this case as follows:

> That said Clinton R. Vanfossen on or about the 27th day of December, 2019, in the County of Scott, and State of Iowa did: Listen to, record or otherwise intercept a conversation or communication using electronic or mechanical means, having no right or authority to do so in violation of section 727.8 of the Code of Iowa.

The district court set forth the elements of preventing apprehension or obstruction of prosecution in count VII in this case as follows:

> That said Clinton R. Vanfossen on or about the 8th day of January, 2020, in the County of Scott, and State of Iowa did: with the intent to prevent the apprehension or obstruct the prosecution of any person, knowingly destroy or conceal physical evidence which would

be admissible in a trial, in violation of section 719.3(1) of the Code of Iowa.

"We review sufficiency-of-evidence claims for correction of errors at law." *State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023) (quoting *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022)). Our sufficiency review is the same for a bench trial as a jury trial. *State v. Myers*, 924 N.W.2d 823, 826 (Iowa 2019). "We will uphold a . . . verdict if it is supported by substantial evidence." *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). "Evidence is substantial if it is 'sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Mathis*, 971 N.W.2d 514, 516–17 (Iowa 2022)). We consider the evidence "in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced." *Id.* (quoting *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005)).

*A.      Invasion of Privacy–Nudity*

Vanfossen challenges the sufficiency of the evidence that he "knowingly" recorded T.B. and J.B. because he believed the cameras were inoperable during their stay. After receiving an incorrect password error message on the app required to view the livestream, Vanfossen presumed the cameras were dysfunctional. Upon discovery of the two hidden cameras, police officers retrieved micro-SD cards depicting T.B., J.B., and A.V. in various states of nudity. It is undisputed Vanfossen captured the recordings without the three victims' knowledge or consent.

Despite Vanfossen's belief the cameras had no recording capabilities at the time of T.B. and J.B.'s visit, we find it reasonable for a fact finder to conclude that

he knew there was the possibility the cameras were still functional. Vanfossen extensively researched spy cameras before he purchased the first hidden camera. Vanfossen claimed he purchased a second camera and affixed it to the ceiling of A.V.'s bedroom after the first one in the hallway stopped functioning properly. Though Vanfossen claimed he could not access the livestream, the cameras still captured and stored footage. Based on Vanfossen's comprehensive research of spy cameras, we find it reasonable that he was familiar with the cameras' features and capabilities. The district court correctly determined the State presented sufficient evidence Vanfossen knowingly recorded T.B. and J.B.[4]

Vanfossen testified he installed the cameras to monitor his daughter and protect her religious purity in fear she might bring a boy home. Vanfossen also feared for the safety of A.V. after viewing advertisements for the movie "Taken." The district court determined Vanfossen's testimony was not credible:

> If [the] Defendant felt compelled to protect his family his focus would not have been only on his daughter and only in her bedroom and previously her bathroom. . . . There are countless places he could have placed cameras that would have allowed him to see who was entering the home while also not placing his daughter or anyone in her bedroom at risk of being filmed during private and nude moments.

Moreover, Vanfossen's letter addressed to his daughter and various journal entries depicted a "disturbing and . . . inappropriate attraction to [A.V.]." Vanfossen

---

[4] Additionally, Vanfossen asserts he did not film T.B. and J.B. with the purpose of arousing or gratifying his sexual desires. In response, the State argues we can consider not only Vanfossen's lascivious attraction to his daughter, but "other voyeuristic images in his deleted Google account history" as evidence undergirding his sexual purpose. We agree the detective's testimony that he found "some pornography" (images of partially nude females doing yoga and exercising) in Vanfossen's internet downloads was probative of Vanfossen's intent. We find sufficient evidence on this element.

heavily relied upon his religious faith to explain the nature of his love for his daughter. However, Vanfossen did not mention either of his other two children in his letter or journal entries.

Finally, the lack of evidence indicating Vanfossen viewed the recordings is irrelevant. Section 709.21(1) does not require the accused to film *and* view recordings to satisfy their sexual desires. The surrounding circumstances support Vanfossen's clear sexual motives for installing the cameras in and outside of his daughter's bedroom. We conclude substantial evidence supports Vanfossen's conviction for invasion of privacy–nudity.

### B. Electronic or Mechanical Eavesdropping

Vanfossen challenges the sufficiency of the evidence he intended to electronically or mechanically eavesdrop.[5] Vanfossen claims on appeal he did not know the cameras had audio recording capabilities.

The recovered SD card files show audio recordings of T.B. and J.B.'s conversations during their stay. Vanfossen argues an accused must intend to record a conversation to violate Iowa Code section 727.8. *See State v. Philpott*, 702 N.W.2d 500, 504 (Iowa 2005). We note section 727.8 is a general intent statute. *State v. Philpott*, No. 04-0060, 2005 WL 156824, at *4 (Iowa Ct. App. Jan. 26, 2005). Vanfossen's assertion he was unaware of the cameras' ability to record audio is contradicted by his extensive research of spy cameras. We find a reasonable fact finder could find there was sufficient evidence Vanfossen intended

---

[5] Vanfossen challenges the adequacy of the district court's finding of fact regarding this count. The State alleges Vanfossen failed to preserve error because he did not file a post-trial motion. We proceed to address the sufficiency of the evidence claim.

to record the audio in the room because he knew the camera's capabilities from his research.

Moreover, both parties concede the cameras captured audio. Defense counsel admitted while advocating for Vanfossen's acquittal that "we heard the audio on the recording, we saw the Defendant interacting with the cameras." The State responded, arguing the camera recorded the two houseguest's conversations without their consent, which "certainly meets all the elements of the Electronic or Mechanical Eavesdropping count."

There is no dispute whether the cameras audio recorded T.B. and J.B. while staying with the Vanfossens. Thus, we conclude substantial evidence supports Vanfossen's conviction for electronic or mechanical eavesdropping.

*C.      Preventing Apprehension or Obstruct Prosecution*

Vanfossen asserts losing his phone was a mere coincidence and there is insufficient evidence that he intentionally disposed of it. However, Vanfossen hurried out early the following morning to purchase a new phone after learning the police had discovered the hidden cameras. Vanfossen maintained he needed a new phone to photograph his classroom for an in-service meeting. Yet, two digital cameras were among the myriad electronics police seized from Vanfossen's home.

Police later discovered Vanfossen's phone had pinged to the neighbor's Wi-Fi the night they found their hidden cameras. In response, Vanfossen claimed he likely threw his phone into the garbage accidentally.

Vanfossen's wife testified Vanfossen was not technologically savvy and would often go weeks at a time without using his phone. But as the district court

observed, "someone who rarely uses their cell phone would not rush out to purchase a new cell phone hours after allegedly misplacing the phone."

Because Vanfossen's lost phone had the required app downloaded—the app necessary to view the livestream and other recorded material from the cameras—it was a crucial piece of evidence. The district court aptly found Vanfossen "[did not] just happen[] to misplace his cell phone the same night police visited his home." Substantial evidence supports Vanfossen's conviction for preventing apprehension or obstructing prosecution.

Viewing the evidence in the light most favorable to the district court's determinations of guilt and giving due deference to its credibility findings, we find substantial evidence Vanfossen committed these crimes. We affirm on this issue.

## IV.    *Consecutive Sentences*

Vanfossen challenges the district court's failure "to state a separate reason for the imposition of consecutive sentences." Specifically, the court ordered: "The sentences imposed in counts 1, 5 and 7 shall run consecutive to one another. The sentences imposed in counts 2, 3, 4 and 6 shall run concurrent with each other and concurrent to the consecutive sentences imposed in counts 1, 5 and 7." At sentencing, the court provided several reasons for imposing a term of incarceration, including the nature of the offenses, Vanfossen's lack of remorse and lack of credibility, and Vanfossen's criminal history. The court did not, however, state its rationale for imposing consecutive sentences.

We review challenges to a sentence for correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). However, we will not disturb a defendant's sentence "unless the defendant demonstrates an abuse of [the] trial

court['s] discretion or a defect in the sentencing procedure." *State v. Lovell*, 857 N.W.2d 241, 242–43 (Iowa 2014) (citation omitted). The district court must state on the record its reasoning for imposing a particular sentence. Iowa R. Crim. P. 2.23(2)(g). Further, the court must provide specific reasoning for why it chose to impose consecutive sentences as opposed to concurrent sentences. *State v. Hill*, 878 N.W.2d 269, 275 (Iowa 2016).

The State concedes the court "did not satisfy the mandate of *State v. Hill* in setting forth its reasons to impose certain sentences consecutively." "[T]his omission necessitates a remand to the district court for resentencing." *State v. Nickerson,* No. 15-2184, 2017 WL 1735619, at *2 (Iowa Ct. App. May 3, 2017). On remand, the district court should determine whether Vanfossen's sentences should run consecutively or concurrently and "explicitly state the reasons for imposing a consecutive sentence." *See Hill*, 878 N.W.2d at 275.

Vanfossen also challenges the court's failure "to state a tenable reason for the sentence of imprisonment" and consideration of "an impermissible factor to support the sentence." Because we vacate the court's sentencing order and remand for resentencing, we need not address the merits of Vanfossen's remaining sentencing claims. Further, because there is no indication the court considered an impermissible sentencing factor, we decline Vanfossen's request to be resentenced "before a new judge." *Cf. State v. Lovell*, 857 N.W.2d 241, 243 (Iowa 2014) (remanding for resentencing before a different judge, "[i]n order to protect the integrity of our judicial system from the appearance of impropriety," where the remand was necessitated by the court's consideration of impermissible sentencing factors); *but see State v. Duffield*, No. 23-0786, 2024 WL 2312555, at

*2 (Iowa Ct. App. May 22, 2024) (extending *Lovell*'s rationale to a remand necessitated by failure to provide rationale for consecutive sentences).

**CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING.**